COMMONWEALTH *vs.* NORTH SHORE ICE DELIVERY COMPANY
& others.

Suffolk.   December 7, 1914. — December 31, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Monopoly.   Restraint of Trade.*

The contracts, agreements, arrangements or combinations in violation of the common law which under St. 1908, c. 454, the Attorney General by a suit in equity in the name of the Commonwealth may enjoin are of three classes: first, those that establish or maintain a monopoly in the manufacture, production or sale in this Commonwealth of any article or commodity in common use, second, those that prevent or restrain competition in the manufacture, production or sale of any such article or commodity, and, third, those that by establishing or maintaining such a monopoly prevent or restrain the free pursuit in the Commonwealth of any lawful business, trade or occupation.

A combination of ice dealers in a territory in and near which are waters suitable for obtaining ice readily available to any one wishing to go into the business, made by means of contracts by which these dealers agree to dispose of their plants for the delivery of ice and to sell their ice to a delivery company that maintains the necessary wagons and plant for delivering ice to the consumers, is not a monopoly of gathering, storing, selling or delivering ice under St. 1908, c. 454, and, where the competition of other ice dealers in the territory, instead of being diminished by the formation of this arrangement for delivery, has increased since that formation, there is under that statute no restraint of competition nor prevention of any person from the free pursuit of the lawful business of gathering, storing, selling or delivering ice in the territory in question.

Under St. 1908, c. 454, which provides that the Attorney General in the name of the Commonwealth may maintain a suit in equity to enjoin monopolies, restraints of competition and the prevention of the free pursuit of any lawful business in violation of the common law in the manufacture, production or sale in this Commonwealth of any article or commodity in common use, the power of a combination of dealers to enhance "temporarily" the price of an article in a certain territory is not decisive to show a violation of the statute, and in the present case, where it was plain upon all the findings that any such enhancement must be of very short duration, if made at all, it was held that there was no violation of the statute.

Under St. 1908, c. 454, which provides that the Attorney General in the name of the Commonwealth may maintain a suit in equity to enjoin monopolies, restraints of competition and the prevention of the free pursuit of any lawful business in violation of the common law in the manufacture, production or sale in this Commonwealth of any article or commodity in common use, an advantage obtained by superior business efficiency, which makes it more difficult for another person to enter that business because he must compete with the results of such efficiency, is not within the prohibition of the statute.

SHELDON, J. This bill in equity is brought by the Attorney General in the name of the Commonwealth under St. 1908, c. 454, § 2.

The first section of that act reads as follows: "Every contract, agreement, arrangement or combination in violation of the common law in that thereby a monopoly in the manufacture, production or sale in this Commonwealth of any article or commodity in common use is or may be created, established or maintained, or in that thereby competition in this State in the supply or price of any such article or commodity is or may be restrained or prevented, or in that thereby, for the purpose of creating, establishing or maintaining a monopoly within this State of the manufacture, production or sale of any such article or commodity, the free pursuit in this State of any lawful business, trade or occupation is or may be restrained or prevented, is hereby declared to be against public policy, illegal and void." The Sts. of 1911, c. 503, 1912, c. 651, and 1913, c. 709, passed apparently with reference to the same subject matter are not material upon the questions here presented.

It will be well to look at the scope and object of this act before considering its effect upon the facts of this case. The act forbids, and gives a specific remedy against, not every agreement, arrangement, or combination which involves a violation of the common law, but only those particular agreements, arrangements and combinations which violate that law in three stated respects: first, that they create, establish or maintain a monopoly in the manufacture, production or sale in this Commonwealth of any article or commodity in common use; secondly, that thereby competition in this Commonwealth in the supply or price of any such article or commodity is or may be restrained or prevented; thirdly, that for the purpose of creating, establishing or maintaining a monopoly, such as has been stated, the free pursuit in this Commonwealth of any lawful business, trade or occupation is or may be restrained or prevented. All other acts, agreements or combinations, tending toward the restraint of trade or the practical control of any business or occupation, are left to be dealt with under the remedies afforded by the common law. It is only to restrain the doing of acts forbidden or declared illegal by the statute itself that the remedy given by its second section

can be resorted to. The question before us is, therefore, whether the acts found to have been done by the defendants are included in either one of the three classes above stated.

Careful and complete findings of fact have been made by the judge who heard this case. They need not be repeated in detail. But in our opinion it appears from those findings that what has been done by the defendants does not come within the first class of the acts forbidden by the statute. What they have done is in substance to do away with the useless and expensive competition that had existed among themselves in the delivery of ice. Those of the defendants who before April, 1913, were engaged in the gathering, storing and selling of ice have agreed to dispose of their plant for the delivery of ice to their customers and to sell their ice to the Delivery Company (as the defendant first named in the bill will hereafter be called), which company in its turn maintains the necessary wagons and plant, for the delivery of the ice to the consumers thereof. These agreements have been carried out, and in this way the useless multiplication of delivery wagons has ceased to be needed, and an expense which was largely a mere waste of time, energy and money has been saved to the defendants. But it cannot be said that by this means a monopoly of either gathering, storing, selling or delivering ice has been created or maintained. It has been found that there are waters which may be used for the obtaining of ice in and near to this territory readily available as a source of supply to any one wishing to go into the business. There is apparently no difficulty in gathering and storing ice in whatever quantities may be necessary. The same thing is true as to its delivery, upon the findings that have been made. There were before the action of the defendants other independent ice dealers or pedlers engaged in the sale and delivery of ice in the territory supplied by the defendants. Since that time, some of these dealers have increased the number of delivery teams operated by them, and several new dealers have entered into the business, all in competition with the Delivery Company. Thus it appears that there has not been created or maintained any monopoly in the sale or delivery of ice in this territory. Nor do we see how it can be said that the acts of the defendants in eliminating one part of a useless and expensive competition among themselves can have, as matter of law, any

tendency toward the creation of a monopoly in either the gathering, the storing or the sale and delivery of ice. There is nothing to hinder any one who chooses to do so from engaging in competition with the defendants, as several persons in fact have done. There is an abundance of ice to be had; facilities for its storage can be obtained without difficulty; horses and wagons or motor trucks can be bought and drivers and other employees can be hired by any one who desires to go into the business; and the article to be sold is not one, of which either the supply or the means of sale and delivery can be readily controlled or "cornered."

For like reasons, upon the facts found, we cannot say that the defendants' acts have been such that thereby competition in the supply or the price of ice is or may be restrained or prevented. The supply of ice is practically unlimited in this vicinity; the price has not been increased since the arrangements of the defendants were made. Although competition between most of the defendants in one branch of their business at least has been eliminated, what they have done is far from destroying or tending to destroy competition with them by other dealers. It is expressly found that the effect of the formation of the Delivery Company has not been such as to prevent or preclude other persons from entering into the ice business. Indeed, as we have seen, the competition of other dealers, instead of being diminished, has been increased since that formation.

As to the third class of conduct inhibited by the statute, it is manifest that nothing which the defendants have done has restrained or prevented any person from the lawful pursuit of the business of gathering, storing, selling or delivering ice in Lynn or its neighborhood, or tended toward such restraint or prevention, nor did the defendants intend to bring about such a result. This has been found almost in terms.

The Attorney General has not contended that the findings made were not warranted by the evidence. But he has contended strongly that upon some of those findings the bill can be maintained. It has been found that the Delivery Company has the power to advance temporarily the price of ice in Lynn and Nahant; that though the effect of the formation of the Delivery Company has not been and was not intended to be to prevent other

persons from entering into the ice business, yet it now is more difficult for any person to enter into that business because of the efficiency with which the Delivery Company is able to transact its business; that the defendants have not monopolized or attempted to monopolize the production, supply or delivery of ice, "except as herein [in the report of facts found] expressly set forth;" and the same exceptions made to the finding that no restraints upon competition have resulted from the acts or conduct of the defendants. But these findings cannot alter our conclusion. A power to enhance merely "temporarily" the price of an article is not decisive upon any of the issues raised here; and it is plain, upon all the findings, that any such enhancement must be of very short duration, if made at all. That the efficiency with which a man of affairs carries on his business would tend to discourage competition with him to the extent found here is likewise far from being decisive. The law does not seek to deprive any person of the advantage coming from the superior qualifications with which nature may have endowed him or which he may have acquired by well directed and persistent efforts. Certainly an advantage obtained by such efficiency is not within the ban of the statute under which this bill is brought. And, as to the exceptions that have been stated in the findings, it is enough to say that we have been able to discover nothing "expressly set forth" in the findings which requires or permits us to reach the conclusion that in either one of the three respects which have been stated the defendants' conduct has constituted a violation of the statute.

We have considered carefully all the arguments which have been addressed to us, and, although we have cited none of them, we have examined all the decisions to which our attention has been called. Each case must depend upon its own circumstances. The facts proved in this case do not come within the purview of our statute; and accordingly we are clearly of opinion that the decree dismissing the bill must be affirmed.

*So ordered.*

*Lee M. Friedman,* for the Commonwealth.

*H. Parker, (H. H. Fuller & H. E. Miller* with him,) for the defendants.

*B. N. Johnson,* for the Essex Trust Company, submitted a brief.