QUINCY OIL COMPANY *vs.* GEORGE W. SYLVESTER & another.

Norfolk.    January 13, 14, 1921. — March 4, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & JENNEY, JJ.

*Contract,* Validity. *Restraint of Trade.*

A corporation engaged in the business of selling petroleum products at wholesale and maintaining a station in a city in this Commonwealth with tanks in which was stored gasoline, purchased by it outside of the Commonwealth and brought here by interstate commerce, and from which delivery was made to its customers in its tank wagons, made a contract in writing with the proprietor of a garage in a nearby town in the Commonwealth whereby it delivered to him a gasoline pump of a certain agreed value to be used in the sale of gasoline furnished by the corporation, the garage proprietor agreeing "to purchase for cash all our gasoline and to accept as part of this contract the following conditions," among which were conditions "not to use said equipment for any other purpose than the one specified, nor use it in connection with any merchandise not furnished by the" corporation, and that, immediately "upon any infringement" by him "of any of the provisions of" the contract, the corporation might remove the pump or, at its option, bill it at the agreed value to the garage proprietor "and said charge shall become due forthwith." *Held,* that

(1) The transaction was not in interstate commerce, and 38 U. S. Sts. at Large, 719, § 5; 731, § 3, did not apply;

(2) The contract did not impose upon competition an unreasonable restraint tending to the prejudice of the public;

(3) The contract was not invalid.

CONTRACT upon the contract in writing described in the opinion. Writ in the District Court of East Norfolk dated August 15, 1919.

On appeal to the Superior Court, the action was heard by *Hall,* J., without a jury, who, the parties agreeing to a statement of all the material facts in the case, reported it to this court for determination.

*W. P. Kelley,* for the defendants.

*G. W. Abele,* for the plaintiff.

DE COURCY, J. The plaintiff is a Massachusetts corporation, authorized by its charter "to engage in the business of selling

petroleum products at wholesale in all its branches, and every-thing incidental thereto." It maintains an oil station in Quincy, with tanks in which the gasoline purchased by it is stored, and from which delivery is made in its tank wagons. The defendants were a copartnership, engaged in the general garage business in Braintree, including the sale of gasoline at retail. Under date of November 14, 1917, the parties entered into a written agreement, by the terms of which the plaintiff loaned to the defendants "One Five-gallon Bowser Chief Sentry Pump delivered at Independence Ave., Braintree, Mass., to be used in the sale of 'Quincy Motor Gasolene' valued at $452.00 '(hereinafter referred to as the initial value).'" In consideration thereof the defendants agreed "to purchase for cash all our Gasolene and to accept as part of this Contract the following conditions." Among the conditions are these: "We, promise not to use said equipment for any other purpose than the one specified, nor use it in connection with any merchandise not furnished by The Quincy Oil Company." And "Immediately upon any infringement on our part of any of the provisions of this Contract The Quincy Oil Company 'may enter upon said premises and remove said equipment, or any part thereof or' may, at its option, bill all or any portion of the equipment they have loaned us, at its initial value, and said charge shall become due forthwith and be a valid claim against us, and also any property we now have or may hereafter possess, but in no event shall the title vest in us, until the initial value thereof has been paid in full."

In pursuance of this agreement the equipment was duly installed, and the defendants purchased their gasoline from the plaintiff until on or about June 30, 1919; since which time they have bought their supply elsewhere. On June 27 they wrote the plaintiff that they were "contemplating a change of gasoline" and offered $300 for the pump equipment. Under date of July 15, the plaintiff, exercising its option, billed the equipment to the defendants at the initial value, $452; stating "This is because of an infringement upon this contract." The present action was brought to recover that amount. All the material facts being agreed upon, the trial judge reported the case to this court for determination without making any decision thereon. R. L. c. 173, § 105, as amended by St. 1917, c. 345.

The defence of *ultra vires*, set up in the answers, has not been argued, and we treat it as waived. See *New York Bank Note Co. v. Kidder Press Manuf. Co.* 192 Mass. 391, 404. The only defence now relied on is, that the agreement was one against public policy and in restraint of trade, and therefore void. In the determination of that question the Federal Trade Commission Act (38 U. S. Sts. at Large, 719, § 5; U. S. Comp. Sts. (1916), § 8836e), and the Clayton Act (38 U. S. Sts. at Large, 731, § 3; U. S. Comp. Sts. (1916), § 8835c), cited by the defendants, have no application. The transaction between these parties was a domestic one. At a preliminary stage, the gasoline necessarily was brought to the plaintiff's place of business by interstate commerce. But thereafter it was stored in the tanks at its oil station in Quincy, and sold to people in this Commonwealth, in the same way that retail dealers generally sell from their local stocks of goods. *H. P. Hood & Sons v. Commonwealth,* 235 Mass. 572. *Commonwealth v. North Shore Ice Delivery Co.* 220 Mass. 55. The argument that the purpose and effect of the contract was to establish a monopoly is not supported by the record in the case. There is nothing to indicate that the plaintiff acquired or was likely to acquire monopolistic control of gasoline in Quincy, to the exclusion of competition. There were others from whom the defendants could have purchased their supply prior to June 30, 1919, as in fact they did after that date. See *United Shoe Machinery Co. v. La Chapelle,* 212 Mass. 467, 480.

The main contention of the defendants is that the contract is void as against public policy. Under modern trade conditions a contract is not void at common law because it imposes restraint upon competition, unless that restraint is unreasonable, and tends to the prejudice of the public. When on considering the contract in the light of the business and situation of the parties and the circumstances with reference to which it was made, it appears that the restraint contracted for is for an honest purpose, is only such as affords a fair protection to the legitimate interests of the party in whose favor it is imposed, and not so large as to interfere with the interests of the public, the restraint is held to be reasonable, and the contract valid. *Meyer v. Estes,* 164 Mass. 457. *Rackemann v. Riverbank Improvement Co.* 167 Mass. 1. *Anchor Electric Co. v. Hawkes,* 171 Mass. 101. *Commonwealth*

v. *Strauss,* 188 Mass. 229. *New York Bank Note Co.* v. *Kidder Press Manuf. Co.* 192 Mass. 391. 6 R. C. L. 789. The contract under consideration was not invalid merely because the plaintiff offered the loan of the pump, valued at $452, to induce the defendants to sell its gasoline exclusively. See *Butterick Publishing Co.* v. *Fisher,* 203 Mass. 122. It cannot be said that this, and the restriction that other oil should not be used in the plaintiff's pump, were greater than was necessary for its protection. The defendants had the use of the equipment free of charge, and paid only the current market price for the gasoline. They were free to terminate the contract at any time by purchasing the equipment. On the facts disclosed we cannot say that the agreement was unreasonable as between the parties or prejudicial to the interests of the public. It follows that judgment must be entered for the plaintiff in the sum of $452, with interest from the date of the writ.

*So ordered.*