## LIPSON v. SOCONY–VACUUM CORPORATION.

## SAME v. STANDARD OIL CO. OF NEW YORK, Inc.

Nos. 5628, 5629.

District Court, D. Massachusetts.

Aug. 6, 1934.

Claude B. Cross, Edward C. Park, and Withington, Cross, Proctor & Park, all of Boston, Mass., for plaintiff.

Stobbs, Hartwell & Stockwell, of Worcester, Mass., for defendants.

**BREWSTER, District Judge.**

These cases are before the court on demurrers to plaintiff's declarations. They may be conveniently disposed of in one opinion, inasmuch as the allegations of each declaration are identical, except that in one the defendant is the Socony-Vacuum Corporation (hereinafter referred to as the Socony Corporation) and in the other the defendant is the Standard Oil Company of New York, Inc. (hereinafter referred to as the Standard Company). The declarations contain the usual allegations respecting diverse citizenship and venue. Several paragraphs of the declaration are taken up with general descriptions respecting the refining, transporting, marketing, and distributing of gasoline produced in the United States by companies, other than the defendants, engaged in the different branches of the petroleum industry directly or through subsidiary or affiliated companies. These general allegations can have no materiality except as they may afford a background, or setting, for the allegations that relate particularly to the defendants. Summarized, they are that these companies market their products at both wholesale and retail; that gasoline is sold under tradenames or brands of the refiner; that it is sold in bulk, requiring transportation and storage facilities, the gasoline being distributed to the principal marketing centers in tank steamers or tank cars and there stored or transshipped by tank trucks or tank wagons to the purchaser, who sells at retail to proprietors of gasoline stations. The sales for delivery in tank cars are described as upon tank car market; sales for deliveries in tank trucks or tank wagons are described as upon the tank wagon market; and the tank car prices are customarily lower than the tank wagon prices by a substantial margin.

It is alleged that the plaintiff operates filling stations and has, for a number of years, purchased "Socony" gasoline from the defendant Standard Company and its predecessor Standard Oil Company of New York, and resold the same at retail.

So far as the allegations of the declaration relate particularly to the defendants, these may be also summarized. It is alleged that the defendant Socony Corporation is the result of a merger in 1931 of the Vacuum Oil Company and the Standard Oil Company of New York; that the Socony Corporation is engaged in the business of refining and marketing petroleum and petroleum products including sales, both wholesale and retail; that the business is conducted mostly through subsidiary corporations and extends throughout a large part of the world; that since the merger marketing operations in the territory comprised by the state of New York and the New England States (referred to as the Northeastern Region) have been carried on by the Standard Company, wholly owned and controlled by the Socony Corporation; that such marketing operations involve shipments

of petroleum products in commerce among the several states; that the Standard Oil Company of New York, prior to the merger, was the largest single factor in commerce in petroleum products in the Northeastern Region, and that its merger with the Vacuum Oil Company increased its control and dominance over such commerce; that the trade-name "Socony" had become well-known in that territory and had created a demand among consumers for Socony gasoline.

It is alleged in general terms that the Standard Company discriminated in price charged for gasoline between the plaintiff and other purchasers in the same territory. Specific allegations, however, show that this discrimination results from the differences in price between gasoline sold in tank cars and gasoline delivered in tank trucks. It is alleged that the Standard Company has refused to sell to the plaintiff in tank car quantities at tank car prices unless he would agree that he would not deal in gasoline and other commodities of competitors. It is also alleged that the Standard Company has sold gasoline to other retailers for resale at the tank car prices to purchasers who have agreed that they would not deal in a competitor's products. The declaration closes with general and sweeping conclusions respecting the effect of the alleged discrimination and the alleged agreement not to deal in competitors' products, alleging that they tend to substantially lessen competition between the defendants and other refiners and distributors of gasoline in the Northeastern Region.

The demurrer sets up three grounds: (1) That the declaration does not allege that the transactions complained of involve commerce between the several states; (2) that the declaration does not state a cause of action under the statutes of the United States entitling the plaintiff to recover; (3) that the declaration is vague and indefinite, in that it does not set forth facts upon which an illegal discrimination is based and does not set forth the dates on which the illegal acts are alleged to have been committed.

■ The third ground for demurrer may be disposed of with the observation that it might afford a basis for a motion for particulars. It is true that there are many allegations in the declaration of a general nature which, standing alone, amount to conclusions rather than allegations of fact which, of course, would not be admitted by the demurrer. There are, however, allegations of fact adequately setting forth a cause of action, unless the demurrer is to be sustained on one or both of the other grounds relied upon.

■ The first ground for demurrer raises the question whether the allegations of the declaration, if proved, would warrant a finding that the transactions complained of involve commerce between the several states. There can be no doubt that it sufficiently appears from the allegations that the defendants are engaged in interstate commerce. A very substantial doubt, however, may be said to exist respecting the question whether the alleged contract for sale, upon the condition that the purchaser shall not deal in a competitor's product, is a contract arising in the course of interstate commerce. This question came before the Supreme Judicial Court of Massachusetts in the case of Quincy Oil Co. v. Sylvester, 238 Mass. 95, 130 N. E. 217, 218, 14 A. L. R. 111, where the contract contained a provision limiting the right of the buyer to deal in competitors' goods. Violation of section 3 of the Clayton Act (15 USCA § 14) was pleaded in defense to a suit brought by the oil company to recover the price of gasoline sold. The court held that the section had no application to the facts, and said in the course of its opinion: "The transaction between these parties was a domestic one. At a preliminary stage, the gasoline necessarily was brought to the plaintiff's place of business by interstate commerce. But thereafter it was stored in the tanks at its oil station in Quincy, and sold to people in this commonwealth, in the same way that retail dealers generally sell from their local stocks of goods."

The facts of that case are on all fours with the case at bar. It nevertheless is a matter of doubt whether that rule would apply in this court in view of the decisions in Binderup v. Pathe Exchange, Inc., 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308, and Standard Fashion Co. v. Magrane-Houston Co., 258 U. S. 346, 42 S. Ct. 360, 362, 66 L. Ed. 653. This doubt should be resolved before parties are put to the necessity and expense of long hearings.

■ The second ground for demurrer raises the broader question of whether proof of the allegations would entitle the plaintiff to three-fold damages under either section 2 or section 3 of the Clayton Act (15 USCA §§ 13, 14). These sections in substance, so far as material to this case, provide that it shall be unlawful for any person engaged in commerce in the course of such commerce, either directly or indirectly, to discriminate in price

964

between different purchasers of commodities to be sold for use or resale in the United States where the effect of such discrimination may be to substantially lessen competition or tend to create a monopoly in any line of commerce, provided that nothing in the statute shall prevent discrimination in price between purchasers on account of quantity of commodity sold, or prevent persons engaged in selling merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade. Section 3 provides that it shall be unlawful for any person engaged in commerce in the course of such commerce to make a sale, or contract for sale, of merchandise for use or resale within the United States on the condition, agreement, or understanding that the purchaser shall not deal in the merchandise of a competitor of the seller where the effect of such sale or condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

Stripped of all immaterial allegations, the plaintiff's asserted cause of action comes to this: That the Standard Company (a subsidiary of the Socony Corporation), in the course of its business of distributing gasoline in a certain territory, has seen fit to sell in tank car lots only to those customers who will agree to deal exclusively in products of the Standard Company. Section 2 of the Clayton Act expressly recognizes and preserves the right to discriminate on account of differences in quantities of commodities sold and also the right of any person thus engaged to select his own customers in bona fide transactions and not in restraint of trade.

The plaintiff gains nothing by alleging in general terms illegal discrimination when the facts alleged in support of the general allegations show conclusively that the discrimination was not unlawful.

When we come to the question whether the allegations are sufficient to bring the defendants within the inhibitions of section 3 of the Clayton Act, which declares unlawful sales upon condition that the purchaser shall not deal in commodities of a competitor when the effect of such condition is to substantially lessen competition or tend to create a monopoly in any line of commerce, the matter is not so easily disposed of. There is language to be found in the cases which intimates that any condition of this kind has a tendency to lessen competition. Thus, in United Shoe Machinery Corp. v. United States, 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708, Judge Day observed, in the course of his opinion, that the restrictive agreements exacted by the United Shoe Machinery Company involved in that case must necessarily lessen competition and tend to monopoly. The facts in that case, however, can hardly be said to be analogous to those in the case at bar.

Standard Fashion Co. v. Magrane-Houston Co., supra, was a case dealing with restricted covenants, and in the course of the opinion the court observed that section 3 of the Clayton Act "was intended to prevent such agreements as would under the circumstances disclosed probably lessen competition, or create an actual tendency to monopoly. That it was not intended to reach every remote lessening of competition is shown in the requirement that such lessening must be substantial."

From the allegations of the declaration, it is evident that the plaintiff is not engaged in interstate commerce, and that there is no conspiracy to injure him in his business; that there was no refusal to sell to him Socony gasoline. The only demand which the defendant Standard Company has refused to meet is that it sell to plaintiff in tank car lots at tank car prices. There is no intimation that the plaintiff is being treated by this defendant any different from any other proprietor of a gasoline station. The real offense alleged is that the defendant Standard Company has adopted a policy, in respect to the marketing of Socony gasoline, of selling in tank car quantities only to those who handle its product exclusively. In my opinion, a jury would not be warranted, under the circumstances disclosed, in finding any substantial lessening of competition or any monopoly or unreasonable restraint of trade as a result of the adoption of such a policy.

While granting that the questions presented by the first and second grounds of the demurrer are close questions, I am constrained to follow the more or less settled practice of this court in sustaining a demurrer in order that questions of law may be determined before trial on the merits.

The defendants' demurrers are sustained on the first and second grounds in both actions.