**LIPSON v. SOCONY VACUUM CORPORATION.***

**SAME v. STANDARD OIL CO. OF NEW YORK.**

Nos. 3137, 3138.

Circuit Court of Appeals, First Circuit.

Jan. 5, 1937.

*Writ of certiorari granted 57 S. Ct. 612, 81 L. Ed. ——.

266

Edward O. Proctor, of Boston, Mass. (Edward C. Park and Withington, Cross, Proctor & Park, all of Boston, Mass., on the brief), for appellant.

Loue E. Stockwell, George R. Stobbs, and Stobbs & Stockwell, all of Worcester, Mass., for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

These are actions at law to recover treble damages under sections 2, 3, and 4 of the Clayton Act, 38 Stat. 730 (15 U.S. C.A. §§ 13, 14 and 15). Since the allegations in each case are the same, they may be disposed of in one opinion.

Both cases were previously before this court on appeal from the ruling of the District Court sustaining a demurrer to the plaintiff's declarations. The rulings of the District Court were sustained [76 F.(2d) 213] on the ground that the alleged unlawful acts of the defendant did not appear to have been done in the course of interstate commerce; that there was no averment of any facts with substantial certainty that the plaintiff was discriminated against; and that the allegations upon which plaintiff relies to show that acts of the defendants may substantially lessen competition, or which may tend to create a monopoly, were too vague, indefinite, and insufficient to warrant such a finding.

The judgment of the District Court was vacated, however, provided that plaintiff filed within a definite time an amendment to his declaration rectifying the defects therein pointed out by this court; otherwise the judgment of the District Court was affirmed.

The plaintiff within the time limit fixed by this court filed a substituted or amended declaration to which the defendants filed a demurrer setting forth three grounds therefor as follows:

1. That the plaintiff's declaration does not allege that the transactions complained of involved commerce between the several states.

2. That the declaration does not state a cause of action under the statutes of the United States entitling the plaintiff to the relief prayed for.

3. That the declaration is vague, indefinite, and insufficient in that it does not allege facts which show a tendency to substantially lessen competition in interstate commerce, or facts which show a tendency to create a monopoly, or any illegal discrimination on the part of the defendant.

The District Court sustained the demurrer on the ground that the amended declaration did not remedy the defects which this court pointed out in the original declaration, and that the allegations of sale and delivery in tank car lots in interstate commerce were in the alternative and insufficient, and should be resolved against the plaintiff.

From this ruling the plaintiff appealed and assigned as errors that the District

Court erred in sustaining the demurrer and in entering judgment for the defendants.

The question is: Does the amended declaration set forth a cause of action "concisely and with substantial certainty" as required by section 7 of chapter 231 (Mass.G.L.1921; Ter.Cent.Ed.1932)? It may well be questioned whether the declaration sets forth the substantive facts "concisely," but it is urged by the defendants' counsel that it does not set forth facts constituting a cause of action with "substantial certainty."

The first seven paragraphs of the amended declaration describe the parties and the method of producing and the distribution of gasoline, and have no special bearing on the issue raised by demurrer.

In paragraphs 8, 11, 13, and 17 the plaintiff seeks to remedy one of the defects in its original declaration, viz., that it did not therein allege that the transactions as therein set forth between the plaintiff and defendants were in the course of interstate commerce.

■ We are unable to agree that, as set forth in paragraph 11 of the amended declaration, the plaintiff has alleged with substantial certainty that, owing to what it terms a continuous flow of gasoline, all gasoline brought into the northeastern territory by the defendants remains in interstate commerce until it is delivered into the storage tanks of the retailer. While it is clear that the defendants must keep a supply on hand in their storage tanks to meet the fluctuations of demands of the retailers, an anticipated demand by retail customers is not sufficient to render shipments a transaction in the course of interstate commerce until delivered to the customer whenever a demand arises. The cases which hold an order or contract for goods which necessitates a shipment in interstate commerce, and that interstate commerce continues until delivered to the customer, do not apply to anticipated demands. We do not think the Supreme Court has gone so far as to hold that, to meet the anticipated demands of customers without a specific contract therefor, interstate commerce continues until the demand eventuates in the form of an order or contract and the merchandise is delivered to the retailer.

The cases of United Shoe Machinery Corp. v. United States, 258 U.S. 451, 42 S. Ct. 363, 66 L.Ed. 708; Binderup v. Pathe Exchange, Inc., et al., 263 U.S. 291, 44 S. Ct. 96, 68 L.Ed. 308, and Standard Fashion Co. v. Magrane Houston Co. (C.C.A.) 259 F. 793, do not sustain such a contention. In each of these cases, and in the other cases cited by the plaintiff on this branch of the case, there was a definite contract which required transportation of the goods in interstate commerce. The plaintiff here is relying on anticipated demands as rendering all gasoline brought into Massachusetts as continuing or remaining in interstate commerce until delivered into the tanks of the retailer. The facts, to warrant such a conclusion as a matter of law, are not alleged with substantial certainty, or otherwise.

■■ While the defendants in paragraph 17 are alleged to have entered into long-term contracts with what are termed their "authorized distributors" who sell on a commission basis, and with retailers dealing exclusively in defendants' products to supply them on a "tank car market," it does not necessarily follow that the gasoline to supply such contracts is not distributed from the defendants' local storage tanks in Massachusetts direct to the consumer in tank trucks at tank car prices, in which case the distribution or transportation from the storage tanks to the distributor or retailer is intrastate commerce. Quincy Oil Co. v. Sylvester et al., 238 Mass. 95, 130 N.E. 217, 14 A.L.R. 111. If such allegations were intended as allegations that gasoline to supply these contracts remained in interstate commerce until delivered to the distributor or retailer, it is doubtful whether it is alleged with the certainty required by the statute.

■ The mere fact that a local transaction may cause a movement in interstate commerce is not sufficient. Moore v. New York Cotton Exchange et al., 270 U.S. 593, 46 S.Ct. 367, 369, 70 L.Ed. 750, 45 A.L.R. 1370, in which case the Supreme Court said:

"If interstate shipments are actually made, it is not because of any contractual obligation to that effect; but it is a chance happening which cannot have the effect of converting these purely local agreements or the transactions to which they relate into subjects of interstate commerce. Ware & Leland Co. v. Mobile County, 209 U.S. 405, 412, 413, 28 S.Ct. 526, 52 L.Ed. 855, 14 Ann.Cas. 1031. The most that can be said is that the agreements are likely to give rise to interstate shipments. This is not enough."

In paragraph 8 the plaintiff alleges in his amended declaration that:

"Gasoline is sold in bulk both at wholesale and at retail and, except in rare instances, not in containers. By reason thereof its distribution requires transportation and storage facilities specifically constructed for that purpose. From refineries gasoline is shipped directly to customers in tank cars or tank trucks, or to the principal marketing centers in tank steamers, or by pipe lines from which it is directly transshipped by tank car, tank truck or tank wagon, to customers, or is pumped into *storage tanks* to act as *reservoirs* to meet the fluctuations of demand and supply and from *such tanks is transshipped* to *customers.*

"The defendant owned tank steamers, pipe lines, tank cars and tank trucks, and leases other tank cars. It transported the gasoline which it sold from the refineries to the places of delivery continuously in vessels or vehicles owned by it, and retained full dominion and title to the same during such transportation. Gasoline sold by it in Massachusetts was imported by it into that state either by tank steamers from refineries on the seaboard, or by pipe line from a refinery at Providence, Rhode Island, or by tank car from other refineries, and was shipped directly to customers *or transshipped as above described."* (Italics supplied.)

And in paragraph 13 it is alleged that none of the gasoline sold by the defendants was produced in Massachusetts, there being no refineries in that commonwealth, but was "imported by the defendant into Massachusetts, either in tank cars, or in tank steamers, or by pipe line. Deliveries in tank cars were either in the original tank cars in which the gasoline had been imported or in tank cars into which the gasoline had been transshipped directly from tank steamers. Deliveries in tank trucks were in trucks in which gasoline had been transshipped either directly from tank cars or tank steamers, or from storage tanks."

■ While alternative allegations are permissible in Massachusetts under chapter 231, § 37 (Mass.G.L.1921; Ter.Cent.Ed. 1932), it is only when each alternative allegation sets forth a cause of action. Where one of the alternative allegations presents no ground of action, as in the case of an allegation of delivery in tank cars from refineries direct to a retailer in Massachusetts, *or* of deliveries into the storage tanks of the defendants to be transshipped to customers, it cannot be said that any facts are alleged with substantial certainty showing transportation in interstate commerce, since interstate commerce ends when gasoline is deposited in storage tanks of the defendants to supply local demands. Quincy Oil Co. v. Sylvester et al., supra.

■ Therefore, by reason of the alternative allegations therein, paragraph 8 of the amended declaration standing alone cannot be said to allege with substantial certainty facts showing transportation in interstate commerce to the retailers' storage tanks; but we think the allegations of paragraph 13, wherein it is alleged that from refineries gasoline is imported into Massachusetts and is delivered in the original tank cars in which it is imported, or is delivered in tank cars in which it has been transshipped directly from tank steamers, sufficiently allege that transportation in interstate commerce is continuous until delivered to the retailer.

The allegations in paragraph 13, therefore, comply with sections 7 and 37 of chapter 231 (Mass.G.L.1921; Ter.Cent.Ed. 1932), and sufficiently set forth that, to some extent, at least, gasoline when imported from the refineries and delivered in tank cars is being transported in interstate commerce until received by the retailer, though to what extent this is done does not appear.

■ It is alleged that in their transportation of gasoline into Massachusetts the defendants retain control and title, indicating that the sale is finally consummated in Massachusetts; but this may not necessarily militate against the pleader if, as a direct result, the sale required transportation in interstate commerce. Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239; Lemke v. Farmers' Grain Co., 258 U.S. 50, 42 S.Ct. 244, 66 L.Ed. 458; Federal Trade Commission v. Pacific States Paper Trade Association, 273 U.S. 52, 64, 47 S.Ct. 255, 258, 71 L.Ed. 534.

Assuming that the declaration to the above extent sets forth transportation of gasoline from refinery to retailer in interstate commerce, has the plaintiff also alleged with substantial certainty the other necessary facts to render the defendants liable under sections 2 and 3 of the Clayton Act (15 U.S.C.A. §§ 13, 14)?

The following are the provisions of sections 2, 3, and 4 of the Clayton Act (15 U.S.C.A. §§ 13, 14, 15):

"Sec. 2. It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly to discriminate in price between different purchasers of commodities * * * where the effect of such discrimination may be to substantially lessen competition or tend to create a monopoly in any line of commerce: Provided, That nothing herein contained shall prevent discrimination in price between purchasers of commodities on account of differences in the grade, quality, or quantity of the commodity sold, or that makes only due allowance for difference in the cost of selling or transportation, or discrimination in price in the same or different communities made in good faith to meet competition. * * *

"Sec. 3. It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies or other commodities, whether patented or unpatented, for use, consumption or resale * * * or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

Under section 4 in case of recovery the plaintiff shall recover three-fold the damages sustained by him.

■ The plaintiff obviously must go farther than merely alleging that the defendants are transporting gasoline from refineries to the retailers in Massachusetts in the course of interstate commerce. He must also allege that in the course of such commerce they have discriminated in price between "different purchasers of their commodity," and that the effect of their discrimination may be to substantially lessen competition or tend to create a monopoly in such commerce. Section 2 of the Clayton Act also contains the proviso that it does not prohibit discrimination in price between purchasers of commodities by reason of difference in grade, quality, or quantity.

■ Since the burden of the plaintiff's declaration is that the defendants discriminated in price in case of sales in tank cars over sales in tank trucks or tank wagons, it is obvious that such discrimination is permitted under the proviso in section 2 and is not in itself unlawful. Many of the other practices of the defendants set forth in the declaration have been held not to be unlawful. Federal Trade Commission v. Sinclair Refining Co., 261 U.S. 463, 43 S.Ct. 450, 67 L.Ed. 746; Standard Oil Company of New York v. Federal Trade Commission (C.C. A.) 273 F. 478, 482, 17 A.L.R. 389.

■ It is urged, however, that the added condition in case of sales at tank car prices, that the buyer must agree not to sell the products of a competitor of the defendants, is a violation of section 3 of the Clayton Act, since by so stipulating competition is lessened between the plaintiff and other retailers in the competitive territory and thereby a tendency to create a monopoly results.

We think it cannot be said that the declaration contains sufficient allegations to warrant the conclusion as a matter of law that a monopoly in the northeastern territory may result from such a stipulation. It is alleged that the defendants have sold gasoline in the northeastern section of the county for a number of years and originally had a monopoly in this territory; but taking the pleadings more strongly against the plaintiff, as we must, they now control less than half of the retailers' outlets in that section, the remainder being controlled by, or devoted to the sale of, gasoline by competitive companies which, it is alleged, pursue similar methods in selling their products.

■ The question is, where the requirement that a sale of gasoline in tank cars and at a less price than in case of delivery in smaller quantities by tank trucks will only be made in case the retailer agrees to sell only the defendants' products, results in a lessening of competition in interstate transactions between the plaintiff and stations operated by the Standard Companies and by others in the same competitive territory, to the damage of the plaintiff?

It is obvious from his declarations that the defendants' policy does not affect the amount of sales by the plaintiff of the defendants' products, but only his profits,

since the inference is clear that he has supplied all demands of his customers for "Socony" gasoline, though at a less profit than if he could buy on the tank car market. He does not allege, however, in his amended declaration, that he is equipped to accept gasoline at his filling station in tank cars, or that his profits are so small that he must give up supplying his customers with "Socony" products. The inference is also clear that he buys and sells the products of other integrated or independent companies on the same terms as those of the defendants. There is obviously no discrimination in terms or price between him and other retail customers of the defendants. He is offered the same terms by the defendants as any other retail customer; and since it is alleged that all retailers sell at the same price, which is posted on their pumps at their retail outlets, and that the selling price of all gasoline is the same, at least throughout Massachusetts, competition in price, therefore, cannot result as between him and other retailers, though they deal exclusively in "Socony" products.

"Competition" is defined as: "The effort of two or more parties, acting independently, to secure the custom of a third party by the offer of the most favorable terms." Webster's Dict. "The struggle between rivals for the same trade at the same time; the act of seeking or endeavoring to gain what another is endeavoring to gain at the same time." 12 C.J. 237. This, according to the plaintiff's declaration, his competitors are not seeking to do by offering more favorable terms of sale of Socony products to purchasers.

While we think it is alleged with substantial certainty that the defendants have fixed lower prices for their products in case of the importation of gasoline in tank car lots direct to their customers, provided the customer agrees to deal only in their products, yet it does not appear, owing to there being no competition in price between the plaintiff and other retailers of gasoline, that the result of defendants' policy is to substantially lessen competition in gasoline and other petroleum products between the plaintiff and stations operated by the Standard Companies, or those dealing exclusively in defendants' products, in the same competitive territory. If the plaintiff chooses to sell petroleum products of other competing companies of the defendants rather than to deal in the defendants' products exclusively, it does not follow, as a matter of law, that a refusal by the defendants to sell gasoline to the plaintiff at tank car prices constitutes a violation of the Clayton Act by the defendants.

The judgments of the District Court are affirmed, with costs.