**LAWSON et al.**

**v.**

**WOODMERE, Inc., et al.**

**Civ. A. No. 648.**

United States District Court
S. D. West Virginia.
April 5, 1954.

Thomas W. Harvey, Jr., Huntington, W. Va., for plaintiffs.

L. E. Woods, Jr., and C. F. Bagley, Jr., Huntington, W. Va., for defendants.

WILKIN, District Judge (by designation).

This case came on for hearing on the motion of the plaintiffs for summary judgment, filed January 2, 1953. The

268

motion was based upon the complaint, the answer, and the deposition of the defendant, Harry S. Shivel. The motion stated that there was no genuine issue as to any material facts, and that plaintiffs were entitled to a judgment and decree against the defendants as a matter of law. Briefs were filed, and there were also arguments by counsel. At the time of hearing, the defendants moved that the complaint and action be dismissed on the ground that there was no interstate commerce involved within the meaning of the Sherman Anti-Trust Act, as shown by the pleadings, the evidence, and such facts as had been stated by plaintiffs' attorney.

After due consideration of the arguments, and the authorities cited, the Court is constrained to hold that the motion of the plaintiffs should be overruled, and the motion of the defendants sustained, on authority of: Ewing-Von Allmen Dairy Co., Inc., v. C and C Ice Cream Co., Inc., 6 Cir., 109 F.2d 898; Brosious v. Pepsi-Cola Co., 3 Cir., 155 F.2d 99; Industrial Association of San Francisco v. United States, 268 U.S. 64, 45 S.Ct. 403, 69 L.Ed. 849; Lipson v. Socony Vacuum Corporation, 1 Cir., 87 F.2d 265; Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202.

The plaintiffs are partners, engaged in the business of manufacturing and selling concrete burial boxes and vaults, and also selling metal vaults. Their place of business is Huntington, West Virginia. The metal vaults which they sell, and some of the materials which they use in manufacturing concrete boxes and vaults, are purchased beyond the borders of the state. The boxes and vaults, including the metal vaults purchased outside the state, are stored in the plaintiffs' warehouse in Huntington until sold. On some occasions a special metal vault is ordered for a customer and when received is delivered directly for the customer's use.

The defendant, Woodmere, Inc., is a West Virginia corporation, and owns and operates a cemetery in the City of Huntington. Ridgelawn Cemetery Association is a West Virginia corporation, the stock of which is owned by Woodmere, Inc. Ridgelawn owns and operates a cemetery in Cabell County, West Virginia. The two cemetery associations have the same officers, Harry S. Shivel and Robert M. Bagby. The defendant, Huntington Vault Company, is a West Virginia corporation organized by the officers of the cemetery corporations to engage in the vault business, because vault companies would not sell direct to cemeteries. The stock of this corporation is owned by the defendants, Harry S. Shivel and Robert M. Bagby, in equal amounts. The Huntington Vault Company purchases its vaults outside the state and stores them on the property of Woodmere and Ridgelawn cemeteries until they are used.

The three corporations, having the same officers, have also their headquarters in the same building. The Vault Company has been considered an integral part of the business conducted by the other two defendant corporations.

In October of 1950, Woodmere and Ridgelawn notified all vault companies and undertakers that all vaults to be used in such cemeteries would be installed by the cemetery companies themselves; that all vaults would have to be delivered at least four hours before the funeral ceremony; and that the vault companies would be charged an installation fee of $25, to be paid before the vault would be installed.

Subsequently, in November, 1952, the cemetery corporations entered into a contract with Huntington Vault Company, by which the Vault Company took over the installation of all vaults in the two cemeteries, in accordance with the rules and regulations of the cemeteries, and the Vault Company was given the right to charge a fee for such installation, provided the fee did not exceed $25.

It is this arrangement and practice that the plaintiffs say is a violation of Sections 1 and 2 of Title 15 of the United States Code Annotated, commonly known as the Sherman Anti-Trust Act.

The burial boxes in use at the cemeteries are made of reinforced concrete. Their purpose is merely to keep the earth of the grave from sinking. They are made in sections and can be handled by two men. The vaults, both concrete and metal, are made for the purpose of keeping water from the grave. They are made in two pieces, a base which is installed before the funeral, and a top or cover, which is installed after the casket is put in place. The cemeteries allow only the boxes, which they supply, to be used in the cemeteries, which is for the purpose of insuring a box of proper construction. The Huntington Vault Company was given the contract for installation of all boxes and vaults for the purpose of proper installation and proper protection of cemetery property. It was expressly provided in the agreements, however that Huntington Vault Company was not given any exclusive right to sell vaults. The principal supplier of vaults, used in the cemeteries, has been the Tri-State Vault Company, which is wholly independent and in no way owned or controlled by any of the defendants. At no time has the Huntington Vault Company had a major part of the vault business, and its sale of vaults has decreased. The plaintiffs have also sold vaults for installation in the cemeteries, but in a minor part.

It seems to this Court that all the arrangements made by the cemeteries are within their rights and powers, and beyond the power of Congress to regulate or control. Certainly it would seem to be within the power of cemeteries to specify the kind of boxes and vaults that could be used, and they would seem to have the right to require that all installations be made by them, their servants or agents. It seems clear that what they could do themselves, they could contract that some one else could do, even if such regulations, contracts, or requirements should have some indirect and remote effect upon interstate commerce. The owning and managing of a cemetery is certainly intrastate business. As stated in the cases cited above, the transactions complained of can not be regarded as creating a direct and substantial burden on interstate commerce. The ingredients, which come from without the state, cease to be a part of interstate commerce when manufactured and sold in West Virginia. The sales made by the plaintiffs, except in rare instances, are local in nature, because made after interstate transportation had ceased. They are, therefore, also beyond the purview of Federal authority over interstate commerce. The arrangements complained of went no further than to require a payment of installation fee for the work which was assumed by the cemeteries or their agent. Such arrangements did not prohibit sales by the plaintiffs, and the effect of such arrangements on interstate trade, if any, was clearly incidental, indirect, and remote.

Motion of plaintiffs overruled. Motion of defendants sustained.