## STANDARD OIL CO. OF NEW YORK v. FEDERAL TRADE COMMISSION.

## TEXAS CO. v. SAME.

(Circuit Court of Appeals, Second Circuit.  May 11, 1921.)

Nos. 111, 204.

1. **Trades-marks and trade-names and unfair competition ⬤⟹80½, New, vol. 8A Key-No. Series—Meaning of "unfair method of competition" is for the courts.**

   The meaning of the phrase "unfair method of competition in commerce," used in Trade Commission Act, § 5 (Comp. St. § 8836e), is a question for the court and not for the Commission to determine.

2. **Trade-marks and trade-names and unfair competition ⬤⟹80½, New, vol. 8A Key-No. Series—Question for court not avoided by stating as finding of fact what is conclusion of law.**

   The rule that the meaning of the phrase "unfair method of competition" is a question of law for the courts is not avoided by the Trade Commission's stating as a finding of fact what is a mere conclusion of law.

3. **Trade-marks and trade-names and unfair competition ⬤⟹68—Requirement that dealers distribute only loaner's gasoline from leased devices is not "unfair method of competition."**

   Where distributors of gasoline leased for a nominal rental the devices for distributing the gasoline at filling stations on which they had marked the brand of their gasoline, the requirement that the retailer should not distribute through such device any gasoline except that supplied by the distributor, without a requirement that the retailer could not lease similar devices from rival distributors, was not an "unfair method of competition," which could be prevented by the Federal Trade Commission, especially in view of the fact that supplying, from a pump marked with the name of one brand of gasoline, gasoline of a different brand, would be a deception of the buying public.

4. **Monopolies ⬤⟹8—System which is not restricting competition is not tending to monopoly.**

   Though one function of the Trade Commission is to discern and suppress in their beginning practices which tend to monopoly, such tendency is an inference from proven facts which is a question of law for the court, and which cannot be drawn where the evidence does not show any restriction on competition up to the present time, but instead shows that the business was keenly competitive.

5. **Monopolies ⬤⟹17(2)—Leases of gasoline distributing devices, to be used only for distributing lessor's oil, does not substantially lessen competition.**

   Leases, by gasoline distributors to retailers, of devices for the distribution of gasoline, which contained a clause prohibiting the retailer from distributing through such device gasoline not supplied by the distributor,

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

but which did not prevent the retailer from leasing other devices for the distribution of gasoline of other distributors, does not violate Clayton Act, § 3 (Comp. St. § 8835c), prohibiting leases which substantially lessen competition or tend to create a monopoly in any line of commerce.

## Petition to Revise Orders of the Federal Trade Commission.

Separate petitions by the Standard Oil Company of New York and by the Texas Company against the Federal Trade Commission to have set aside orders of the Commission separately entered against both petitioners. Orders reversed.

Petitions praying that orders of the Federal Trade Commission separately entered against both petitioners dated April 27, 1920, be set aside. These litigations are the local fraction of upwards of 25 proceedings brought by the Commission against persons and corporations in widely separated regions, but all transacting the business of selling and distributing refined petroleum, and especially gasoline suitable for the engines of motor cars. The testimony in these two cases is the same and the pleadings and orders are alike except for names.

In September, 1919, the Commission complained against these petitioners that for more than four years previously they had been engaged in business, or had been conducting their business, in the manner set forth in the findings of fact made after the taking of voluminous evidence. Such findings may be thus summarized (omitting such formal matters as incorporations and the like) :

(1) Petitioners produce and sell refined oil and gasoline, but are not engaged in the manufacture of oil pumps, storage tanks, and containers (hereinafter collectively called "devices").

(2) They have been and are engaged in the leasing and loaning of devices, and they also maintain numerous storage stations for oil and gasoline in various states, which stations are replenished by shipments from petitioners' refineries, and the oil so stored is sold and delivered from said stations to retail dealers in the several states.

(3) Each petitioner has leased and is now leasing, to retailers of its own gasoline, devices to be used by such retailers, and in so leasing petitioners have made and are now making contracts or leases with the retailers obtaining devices, under which any given retailer agrees to use his leased device solely for the purpose of storing and vending the product of whatever petitioner furnished him with the device.

(4) The rental or charge to such retailer for any petitioner's device is nominal, and does not afford a reasonable profit or return to the furnishing petitioner, considering the value of a device, which petitioners procure by buying from manufacturers thereof.

(5) Petitioners have furnished and are furnishing devices to retailers only upon condition that each lessee uses his leased device only for the purpose of storing and selling therefrom the goods of the lessor.

(6) A majority of the retailers so leasing devices require in their business only a single device, though others may and do procure from each of several dealers in oil a leased device, and use them all, provided that each device is used only to facilitate the distribution of the lessor's product.

Upon the fact findings, substantially stated above, orders have been based, entered April 27, 1920, whereby each petitioner was required to "forever cease and desist from (1) directly or indirectly leasing pumps or tanks, or both, and equipment for storing or handling petroleum products in furtherance of its petroleum business, at a rental which will not yield to it a reasonable profit on the cost of same after making due allowance for depreciation; (2) entering into contracts or agreements with dealers in its petroleum products or continuing to operate under any contract or agreement already entered into whereby such dealers agree or have an understanding that, as a consideration for the leasing to them of such pumps and tanks and their equipment, the same shall be used only for storing or handling the products of (the oil dealer proceeded against).

It is evident, and is admitted, that these cases and all the others above alluded to are designed by Trade Commission to break up the present well-known system of distributing and selling gasoline by "kerb pumps," unless the pump furnishers or lessors will agree that anybody's gasoline may be stored in and sold from pumps belonging to and furnished by a particular dealer.

Martin Carey and Peter M. Speer, both of New York City, for Standard Oil Co. of New York.

Edwin B. Parker and James L. Nesbitt, both of New York City, for Texas Co.

Adrian F. Busick and Eugene W. Burr, both of Washington, D. C., for Trade Commission.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). As the matter has not been argued, we have not referred to and will not dwell upon the pleadings put forth by the Commission, and assume, but not hold, that they comply with the rules suggested, if not prescribed, by Federal Trade Commission v. Gratz, 253 U. S. 427, 40 Sup. Ct. 572, 64 L. Ed. 993. In the language of the statute, we think the "findings of the Commission as to the facts are supported by testimony," so far as they go. But there are other facts thoroughly proven, admitted at bar, and aiding discussion.

Every pumping station is an advertisement; each bears the name of the oil producer whose gasoline is supplied therefrom, if the retailer honestly observes his bargain. The system is a great convenience to the public; it has increased enormously the ease with which motor drivers may obtain "gas" even in remote and thinly settled districts. It is the only method known or suggested, of keeping before the consuming public the oil manufacturers' trade-mark, and it has largely succeeded the system of distributing oil in barrels, which barrels bore the maker's trade-mark and were practically loaned to the vendees, to be returned empty.

The choice between owning and leasing pumps depends upon the extent of the retailer's business and the amount of his capital. The majority of small dealers have small capital, and therefore lease rather than buy. It is perfectly possible to buy from the same manufacturers who supply to the oil dealers the pumps leased by the latter. The competition between the various oil-selling persons and corporations is and has been very keen; each is desirous of extending the sale of his own brand, and the system of leased pumps, each bearing the trade-mark or trade-name of its lessor, is regarded by many, though not all, wholesalers as a profitable form of advertisement. There is no agreement, combination, or arrangement between the various wholesale lessors as to parceling out territory or abstaining from supplying pumps to a community already supplied by another wholesaler.

By these facts three questions of law are presented:

(1) Is the system outlined an "unfair method of competition in commerce," the prevention of which would be "to the interest of the public." Section 5, Trade Commission Act, 38 Stat. 719 (Comp. St. § 8836e).

(2) Is the above-stated method of leasing unlawful under section 3 of the Clayton Act (Comp. St. § 8835c), whereof the language here important is noted in the margin.[1]

(3) Does the business here involved amount to interstate commerce?

[1, 2] Whatever may be the exact meaning or extreme scope of the still novel phrase "unfair method of competition," it is settled that it is for the courts and not the Commission to determine as matter of law what is and what is not included in the phrase. Federal, etc., Commission v. Gratz, supra. And this rule is not avoided by stating as a finding of fact what is a mere conclusion of law. New Jersey, etc., Co. v. Trade Commission (C. C. A.) 264 Fed. 509.

The Commission justifies the order complained of by looking to the future rather than at the present—a position summed up in argument as follows:

"The loaning practice restrains competition and tends toward monopoly, for the reason that it destroys the freedom of solicitation for business which the oil distributor would otherwise have. The gratuity which the practice confers removes the opportunity for competition, because it ties tens of thousands of individual retailers to the oil-distributing corporations which engage them."

The Commission, looking forward, sees in the present highly competitive business of the various wholesalers a seed which will in time produce the fruit condemned in Patterson v. United States, 222 Fed. 599, 138 C. C. A. 123, where the court held:

"For one competitor to exclude all or substantially all other competitors from such opportunity—i. e., drive them from the field of freely offering their goods, so as to have that field to himself—is to monopolize according to the legal and accurate sense of the word."

[3] Applied to the present case, this means and is admitted to mean that since most retailers do a small business they need only one pumping device; wherefore the first wholesaler who furnishes a free pump has monopolized the business of that retailer and so unfairly competed with all other wholesale dealers.

We think this reasoning confounds commerce with convenience, besides introducing into trade an element of unfairness, and indeed dishonesty. There is no contract, agreement, or understanding by which any retailer is prevented from selling any brand of oil, and he can own or lease as many pumps as he likes or can use. It is unfair and dishonest to give out from a pump bearing one brand another maker's oil, and all that secures any one retailer's trade for any one wholesaler is the amount of business the retailer can gather from the community.

It is possible, when any system of distributing an article of prime necessity and enormous consumption is well established, that temptation

---

[1] "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease * * * machinery * * * or other commodities * * * for use * * * on the condition * * * that the lessee * * * shall not use or deal in the goods * * * of a competitor * * * of the lessor, * * * where the effect of such lease * * * may be to substantially lessen competition or tend to create a monopoly in any line of commerce." 38 Stat. 731.

arises for competing distributors to enter into treaties regulating prices, classifying customers, or dividing the area supplied into spheres of influence—one sphere for each distributor:

[4] It may be admitted that one function of the Trade Commission is to discern and suppress such practices in their beginning; but a thing exists from its beginning, and it is not a conclusion of law from any facts here found that a system which at present is keenly competitive, extremely advantageous to the public, and, in the opinion of a majority of the competent witnesses, economical, is at present unfair to any one or unfair because tending to monopoly. A tendency is an inference from proven facts, and an inference from the facts as found by the Commission is a question of law for the court. As matter of law there is at present no violation of the Trade Commission statute; therefore the first of respondent's contentions cannot be sustained.

[5] For substantially the same reason the leases of these petitioners do not violate section 3 of the Clayton Act; i. e., the effect of their leases is not "to substantially lessen competition or tend to create a monopoly in any line of commerce." We note Coco-Cola Co. v. Butler (D. C.) 229 Fed. 224, as containing a valuable commentary on this section of the Clayton Act, and the facts of that case are suggestive of the advantages to the public in being reasonably able to rely upon getting the "gas" he pays for out of any trade-marked pump.

It is, of course, true that if the trade or business under consideration is not interstate commerce the Commission had no jurisdiction. We express no opinion on this point; but because, as matter of law, no unfair method of competition has been shown, and no violation of the Clayton Act, the orders complained of are reversed.