AL A. ROSENBUSH & others *vs.* GEORGE A. LEARNED.

Suffolk.    March 17, 1922. — July 1, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Sale*, Warranty. *Contract*, What constitutes. *Evidence*, Of custom. *Custom.*

At the trial of an action for breach of warranty of quality in a sale of shoes, the plaintiff introduced testimony of his salesman and representative, an expert shoe buyer of many years' experience, who negotiated the purchase on his behalf, which was uncontroverted and in substance was as follows: He went to the defendant's factory on a July 22 and met the defendant's general manager, who conducted him to a room where returned or cancelled merchandise was kept and directed his attention to about ten cases of shoes of which full inspection could be made. After an examination of "two to four pair of shoes from each case," he asked whether they were regular shoes and was told by the

manager "that they were regular shoes and that he should look at them." He was given full opportunity to examine and did so as much as he desired. He purchased two lots, which were the subject of the suit, after inspection of the kind he customarily made and after all the inspection that he wanted to give them and "inspection of the same kind as he ordinarily" made "in buying goods which he" knew had "been cancelled by some other buyer." In reply to the question, "And something was said, was there not, about your taking those shoes subject to your own inspection as to quality?" he replied, "Why yes, as I expressed it a moment ago, there they were for me to examine and see what I was buying." Before the sale of the second lot, the defendant wrote the plaintiff a letter inquiring if he had any interest in cases of shoes of a certain description, "prime elegant merchandise." *Held*, that

(1) The words of the letter preceding the second sale were not an express warranty but were mere seller's talk;

(2) There was no express warranty of quality;

(3) There was no implied warranty of quality; but the plaintiff had full knowledge that he was buying "either cancelled or returned merchandise," and it was understood by the parties that the plaintiff selected and bought, in so far as quality and fitness were material, in reliance upon the inspection made by his salesman and representative, to whom full opportunity for examination was given, and not upon the judgment or selection of the defendant or his manager;

(4) The plaintiff was not helped by the fact that invoices sent by the defendant following the sales did not indicate that the shipments were other than of regular shoes, they being only itemized bills which did not by implication express the terms of the actual sales;

(5) Evidence of "a well defined and universal practice and custom in the shoe trade for manufacturers to indicate in invoices covering other than regular merchandise that the goods covered are imperfect, factory damaged, or otherwise," was inadmissible, because in the circumstances a custom could not be read into the contracts which would charge the defendant as having in fact represented and warranted the shoes to be of a certain class or quality.

CONTRACT, with a declaration in two counts, for damages resulting from alleged breaches of warranty of quality in sales of shoes to the plaintiff by the defendant on July 26, and on August 6, 1919. Writ dated February 2, 1920.

In the Superior Court, the action was tried before *White*, J. Material evidence is described in the opinion. At the close of the evidence, by order of the judge, a verdict was returned for the defendant; and the plaintiff alleged exceptions.

*Lee M. Friedman*, for the plaintiff.

*R. G. Dodge*, for the defendant.

BRALEY, J. The plaintiffs, dealers in shoes at wholesale, bought of the defendant and paid for two lots of shoes. The first lot is described in the record as "plum or brown kid shoes," and the

second lot as "plum or brown kid, with field-mouse tops." But customers having returned shoes sold from one or the other of the purchases, claiming that the shoes were defective because when handled in the ordinary course of retail trade the dye or dressing either chipped, wrinkled, cracked or rubbed off, the plaintiffs, after an offer by them to return and the refusal by the defendant of a demand for reclamation, bring this action for damages because the shoes as alleged in the declaration "were not of a certain class or quality" as represented by the defendant.

It appears that on August 2, 1919, the defendant wrote the plaintiffs inquiring whether they had any interest in eight or ten cases "Brown vamp, Mouse Kid top, full Louis Lace; — prime, elegant merchandise." The first lot however was bought July 26, 1919, and the second lot August 6, 1919, and it is not shown that any further correspondence ensued between the parties. The plaintiff, on whom rested the burden of proving the contract actually made, introduced uncontroverted evidence of the following facts. One Stern, acting as the plaintiffs' representative and agent, an expert shoe buyer of many years' experience, went to the factory of the defendant on July 22, 1919, and met the defendant's general manager, who conducted him to a room where returned or cancelled merchandise was kept, and directed his attention to about ten cases of brown kid shoes of which full inspection could be made. After an examination of "two to four pair of shoes from each case" Stern asked whether they were regular shoes, and was told by the manager "that they were regular shoes and that he should look at them." The shoes were then examined by Stern who was informed there was no trouble with the dressing although he noticed that it was bright. But this he said "was not necessarily a defect, as it might be due to the use of too hot an iron or to an excessive amount of dressing, and there was nothing material indicating . . . that the shoes were defective." What followed can well be described in his own words, "he purchased both lots involved after inspection of the kind he customarily made, after all the inspection that he wanted to give them, an inspection of the same kind as he ordinarily makes in buying goods which he knows have been cancelled by some other buyer, being no more suspicious about these goods than others, knowing that they were either cancelled or returned mer-

chandise. That he was familiar with the effect of an extra heavy coating of dressing on kid shoes, can detect it by rubbing the shoe with his hand, could not necessarily have detected trouble with these particular shoes; if the dressing was a year old at the time of his examination, should have detected it by rubbing the dressing with his finger, that nothing interfered with his examination of the shoes." In reply to the question, "And something was said, was there not, about your taking those shoes subject to your own inspection as to quality?" he replied, "Why·yes, as I expressed it a moment ago, there they were for me to examine and see what I was buying." When asked whether something was said about taking the shoes "subject to your own inspection as to quality," and that he could have pulled out any of the shoes he chose, he answered in the affirmative, and also remarked that, "the examination was as extensive as the examination he usually made when buying cancelled shoes." The words of the letter before the second sale "prime, elegant merchandise" can be given no greater effect than the words of the seller to the purchaser in the sale of an automobile which had been considerably used, that it "was in good condition, first class condition," construed as "mere seller's talk" in *Morley* v. *Consolidated Manuf. Co.* 196 Mass. 257, 258..

It is plain that no express warranty was ever given as to either sale. The sales act St. 1908, c. 237, § 12, G. L. c. 106, § 14, expressly provides, that "Any affirmation of fact or any promise by the seller to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if he purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only, shall be construed as a warranty." *Lynch* v. *Murphy*, 171 Mass. 307. Nor was there evidence for the jury of an implied warranty, *Parker* v. *Moulton*, 114 Mass. 99, 100. The sales were negotiated and consummated under the conditions previously described. The plaintiffs could contract for shoes which in some particulars might be imperfect. *Whitney* v. *Boardman*, 118 Mass. 242. It was understood by the parties that Stern should make an examination and act upon his own judgment. The opportunity for examination of the shoes, which had been made and dressed about

a year before, was unrestricted and ample, and Stern conceded that if the condition of the dressing was defective he ought to have detected it. Indeed he testified that "when he tests a shoe, he feels of the leather, and if the dressing is seriously wrong it comes off on the fingers," and "the examination of these shoes was made in the usual way." The plaintiffs had full knowledge that they were buying "either cancelled or returned merchandise," and they selected and bought in so far as quality and fitness was material upon Stern's inspection and in reliance upon his judgment, and not upon the judgment or selection of the defendant or his manager. *Farrell* v. *Manhattan Market Co.* 198 Mass. 271. "If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed." Sales act, St. 1908, c. 237, § 15, cl. 3, now G. L. c. 106, § 17, cl. 3. *Hight* v. *Bacon,* 126 Mass. 10. *Gearing* v. *Berkson,* 223 Mass. 257.

It is true that the invoices remitted by the defendant do not indicate that the shipments were other than shipments of regular shoes. But having been bought and sold as previously stated, the invoices were only itemized bills which did not by implication express the terms of the actual sales, and the plaintiffs' offer of proof, that there is "a well defined and universal practice and custom in the shoe trade for manufacturers to indicate in invoices covering other than regular merchandise that the goods covered are imperfect, factory damaged, or otherwise," was inadmissible. See *Procter* v. *Atlantic Fish Co. Ltd.* 208 Mass. 351. A custom cannot be read into the contracts, which would charge the defendant as having in fact represented and warranted the shoes to be of a certain class or quality. *Barrie* v. *Quinby,* 206 Mass. 259, 264, and cases there cited. *Conahan* v. *Fisher,* 233 Mass. 234, 242.

The remaining exceptions to the admission and exclusion of evidence have ceased to be of any importance, because on the contracts as established by the plaintiffs the verdict for the defendant was ordered rightly.

*Exceptions overruled.*