**CARLAY CO. et al. v. FEDERAL TRADE COMMISSION.**

**No. 8735.**

Circuit Court of Appeals, Seventh Circuit.

Feb. 15, 1946.

494

Theodore E. Rein, Frank E. Gettleman, and Morton C. Chesler, all of Chicago, Ill., for petitioners.

Wm. T. Kelley, Chief Counsel, and Donovan Divet, Asst., Federal Trade Commission, both of Washington, D. C., for respondent.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Petitioners seek a review of an order of the Federal Trade Commission directing them to desist from disseminating advertisements which represent (a) that excessive weight may be removed from the human body through the use of petitioners' product and weight reducing plan without restricting the diet and (b) that the removal of excess weight through the use of the product and plan is "easy." The order further directs that any advertisements shall disclose that the product and plan include adherence to "a restricted diet" and that such adherence is essential to weight reduction. The issue of fact arising upon this order is narrow, involving, as it does, merely determination of whether there was substantial evidence before the Commission to support the finding that petitioners' weight reducing plan is not "easy" and does necessitate following a "restricted diet."

Petitioners manufacture and sell caramel candy containing corn syrup, condensed milk, sugar, hydrogenated cocoanut oil, soybean flour, maltose, defatted wheat germ, powdered egg yolk, powdered carrots, dextrose, vitamin A from liver oil, vitamin B1 from thiamin, vitamin D from ergosterol, salt and artificial flavors. They advertise the candy and a weight-reducing plan, averring that eating one or two pieces of the candy before a meal will deter one from over-eating rich, fattening foods, high in calories; that one does not "cut out sweets, fattening and starchy foods" but rather "just cuts them down." It is not disputed that certain advertised statements are true, such as that this is a wholesome nutritious candy or that the added vitamins A, B1 and D are not found in ordinary candy but are included in order to supply that lack of such vitamins resulting from intake of fewer calories at meal time. The advertisements further represent that the plan is "easy," "simple" and "safe"; that under it, one eats one or two pieces of the candy before meals and that doing so encourages the eater not to consume rich, fattening foods, high in calories; that the candy, eaten as directed by the plan, curbs the appetite for fattening foods; that the plan is effective only in cases where the product is eaten as directed by the plan; that one's intake of food is reduced automatically, without the usual effort, without weakening effects and without hunger pains; that it requires no "dangerous diet," "starvation diet," drugs or exercise. This advertising the Commission has found and now insists is misleading and deceptive for the reason, as it says, that the plan is not "easy" and involves "essentially" a restricted diet.

It is undisputed in this record that eating sweets just before a meal curbs the desire for food and that, as a result, one eating the candy eats less than he otherwise would. The plan does not require desistance from eating any particular food, but the whole thought is that, by eating the candy, the desire for food is reduced and there follows, quite naturally, smaller intake of fats and starches. The resulting deficiency in vitamins is made up by those supplied in the candy. There is some testimony that the curbing of the appetite is "temporary" in effect but the record is not clear as to what the witness had in mind when he employed the comparative term "temporary." We think it manifest, however, that, even under this testimony, the most temporary curb of desire for food covers a period of from three to four hours. Obviously, it

will depend upon the individual as to how long this restraint will continue. With some, it will last from one meal to the other; with others, it may last a shorter time. There is no representation to the contrary. Indeed, petitioners suggest that if one becomes hungry, he may take an additional candy between meals.

The plan, itself, does not appear in the advertisements. It is really in the nature of detailed directions enclosed in the candy box. But each advertisement refers to the plan. Surely, it is impractical to copy or include all the details of the plan in the advertisement, but the reader is advised and knows that when he buys the product and undertakes to follow the plan he must coordinate his action with that plan. The idea does involve eating less food, not as a matter of consciously refraining from eating but as a matter of result in that one eating the candy will, according to well recognized medical principles, have less desire for food and, therefore, eat less. This supports the representation of the advertisements that the intake of food is reduced. In the true sense one is not subjected to a restricted diet but experiences a restricted appetite, a reduced appetite, resulting in a reduced intake of food, all without requirement that the user of the plan shall intentionally refrain from any particular food. This is natural automatic curbing of the appetite and of the desire for food resulting automatically in a reduced intake of food.

These facts are indisputable, we think, from over-all consideration of the testimony of all of the physicians, including two who testified for the Commission and some seven called by petitioners. Neither of those who testified for the Commission had ever made any clinical tests; each was called as an expert to examine the product and its formula and to express an opinion as to the results of use of the candy and plan. Each testified that the caramel was wholesome; that it contained nothing that would, in itself effect reduction in weight; that the vitamin factors would probably be adequate to make up for loss of calories resulting from eating less fattening food; that it was a common thing to eat a sweet to still the appetite; that the calorie intake thereby becomes smaller and that the real accomplishment lay in so following the plan as to result in a "reduced diet." One physician testified for the Commission that one attempting to bring about a reduction of weight due to overeating ordinarily prescribes for his patient one thin slice of bread, a carbohydrate, a protein, fruit juice or unsweetened fruit, fish, cooked vegetables without any cream, sauce or butter and fruit for dessert. Such is ordinary routine, said the doctor, for weight reduction. He agreed that it is quite "a definite thing to do" to curb the appetite by eating candy just before a meal, resulting in lessened intake of all kinds of food at the meal.

Seven experts testified for petitioners, five of whom were reputable physicians, one a pharmaceutical chemist and one a consulting chemist, all apparently highly qualified. Each of them testified that taking petitioners' candy before a meal would reduce the appetite, resulting in lessened food intake and eventually in reduction in weight; that the candy includes dextrose, which is a primary sugar, which is absorbed rapidly in the blood stream and has, therefore, a special value in immediate curb of the appetite. Their testimony indicates clearly that the difficulty with the ordinary person, in voluntarily reducing, is that he begins with good intentions but that his desire for food tempts him to eat more; that when Ayds candy is taken, it almost immediately gets the sugar into the blood stream, curbs the appetite, prevents one from approaching the table with a ravenous appetite and automatically helps him to eat less without conscious effort. Each of these witnesses testified that the plan is relatively easy and simple.

In addition we have the doctors' testimony as to clinical observations, one of them testifying to observation of 22 persons, another 45, another 15 and another 8 and another 32. In practically all of these clinical cases, reduction of weight resulted. One of the physicians tried the plan himself. He adopted no diet. He ate whatever was set before him to eat at home but, as a result of eating Ayds, did not feel hungry, was entirely comfortable and lost five pounds in two weeks. He said he ate whatever was given him but less of everything.

In addition certain persons testified, as to their use of the plan, that the candy took away their appetites, that they lost weight, suffered no pain, had what they cared to eat, found the plan easy to follow, and were troubled by no feeling of hunger. It was stipulated that 25 additional persons, if called, would testify substantially to the same effect as these witnesses.

496

■ There is no evidence in this record to support a finding that it is necessary, in order to follow the suggested plan, that the user adhere to a restricted diet. The facts are plain, it being undisputed that eating candy before meals curbs the appetite, lessens intake of food and involves no restriction of diet but automatically restrains the desire for food. This, we think, is all that petitioners have ever claimed; this, we think, is all that their advertising represents. There is absolute absence of any deceptive representation. It follows that there is lack of substantial evidence to support the finding that a rigorous or restricted diet is necessary.

■ Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. It must be of such character as to afford a substantial basis of fact from which the fact in issue can be reasonably inferred. It excludes vague, uncertain or irrelevant matter. It implies a quality and character of proof which induces conviction and makes a lasting impression on reason. Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 299, 59 S.Ct. 501, 83 L.Ed. 660; National Labor Relations Board v. Thompson Products, Inc., 6 Cir., 97 F.2d 13, 15. The rule of substantial evidence is one of fundamental importance and marks the dividing line between law and arbitrary power; and the requirement that a finding must be supported by substantial evidence does not go so far as to justify orders without a basis in evidence having rational, probative force. Consolidated Edison Co. v. National Labor Relations Board, supra, National Labor Relations Board v. Thompson Products, supra.

■ The Commission says that carrying the plan into execution is not "easy". The term obviously is one of comparative or relative connotation. Whether one plan is easy and another hard, whether one is easier than another, whether one simple and another intricate, are all questions of comparative character and quality. The statement of practically all the witnesses is that the plan is easy and simple, and we think the only inference possible to draw from the undisputed facts lead necessarily to the conclusion that the plan is not a complicated one, but rather a relatively easy one involving no drugs, no restricted or rigorous diet; that its workings are simple in that it is only necessary for the user to eat the candy before meals and thus curb his desire for food, resulting not in the necessity of exercise of will power in refraining from consumption of certain foods, but in less desire for and less intake of all kinds of foods. This, comparatively speaking when one thinks of reduction of obesity, anyone must declare comparatively simple, comparatively easy. Consequently there was nothing deceptive in the advertising in this respect. What was said was clearly justifiable, under the circumstances, under those cases recognizing that such words as "easy," "perfect," "amazing," "prime, "wonderful," "excellent," are regarded in law as mere puffing or dealer's talk upon which no charge of misrepresentation can be based. Kidder Oil Co. v. Federal Trade Commission, 7 Cir., 117 F.2d 892; Rosenbush v. Leonard, 242 Mass. 297, 136 N.E. 341; Bel v. Adler, 63 Ga.App. 473, 11 S.E.2d 495; Bartlett v. Hoppock, 34 N.Y. 118, 88 Am.Dec. 428; Shawen v. District Motor Co., D.C.Mun.App., 34 A.2d 29; Spear Stove & Heating Co. v. General Electric Co., D.C., 12 F.Supp. 977, affirmed, 3 Cir., 80 F.2d 1012; Rachlin v. Libby-Owens-Ford Glass Co., 2 Cir., 96 F.2d 597.

■ Respondent urges that inasmuch as the details of the plan were contained only in the pamphlet inclosed in the candy box, the advertisements were deceptive in that they failed to advise the reader that the plan involved taking less food. Respondent terms this "a restricted diet" but, as we have seen, in truth and in fact it is not a matter of dieting so much as the eating of sweet food to reduce the desire for food of higher calories. As we have observed, each of the advertisements refers to a plan. Anyone who reads them knows that eating the candy was to be accompanied by a suggested plan and that the candy and the plan together constituted the entire helpful contribution. When the reader obtained his candy and perused the plan, of which he had been given notice, he learned not that the advertisement was wrong but merely that the plan coincided with what the advertising told him, when to eat the candy and what the purpose was in eating it. Under such circumstances, we do not think that the detailed directions for eating the food in order to help reduce, must be printed in the advertisement.

The order of the Commission is set aside.