## SINCLAIR REFINING CO. v. FEDERAL TRADE COMMISSION.*

(Circuit Court of Appeals, Seventh Circuit.   September 8, 1921.)

. No. 2838.

Monopolies ⊜⇒17 (1)—Trade-marks and trade-names and unfair competition ⊜⇒80½, New, vol. 8A Key-No. Series—Leasing containers for gasoline purchased from lessor for nominal rental held not "unfair method of competition."

The leasing by a dealer in gasoline for a nominal rental to retail dealers of pumps and tanks to be used solely for the storage and handling of gasoline purchased from the lessor does not constitute an unfair method of competition within Clayton Act Oct. 15, 1914, § 3 (Comp. St. § 8835c), or within Federal Trade Commission Act Sept. 26, 1914, § 5 (Comp. St. § 8836e), and, where there is no attempt by the contract to limit the right of lessees to buy or handle the product of competitors, the Federal Trade Commission has no authority to prohibit such practice.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unfair Competition.]

Petition to Review Order of Federal Trade Commission.

Petition by the Sinclair Refining Company to review order of Federal Trade Commission.   Order set aside.

Ray T. Osborn, of Chicago, Ill., for petitioner.
Eugene W. Burr, of Washington, D. C., for respondent.

Before BAKER, EVAN A. EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge.   This is an original petition against Federal Trade Commission, hereafter called respondent, to review an order made in a proceeding wherein it had filed its complaint against Sinclair Refining Company, hereinafter called petitioner, the substance of which complaint was that petitioner, being engaged in the business of purchasing and selling oil and gasoline and the leasing and loaning of oil pumps, storage tanks, or containers and their equipment, leased, for a nominal consideration, said oil pumps, storage tanks, or con-

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari granted 256 U. S. —, 42 Sup. Ct. 133, 66 L. Ed. —.

tainers and their equipment to persons who purchased oil from petitioner, with the understanding that the same should not be used by the lessees of the pumps and other equipment to hold or pump the oil of any competitor. It was also charged that the leases were made on consideration that lessees should not purchase or deal in the products of a competitor.

In answer to that complaint, petitioner set out the contract, which was found by the Federal Trade Commission to be the uniform contract by which such equipment was leased, the portions of which material here are:

"1. The above-described equipment shall be used by party of the second part [purchaser of gasoline] for the sole purpose of storing and handling the gasoline supplied by party of the first part.  *  *  *

"6. This agreement shall terminate forthwith upon the sale or other disposition of said premises by party of the second part, and in any event upon the expiration of ———— months from the date hereof,  *  * . *  provided, however, that the party of the second part shall have the right and option at such time to purchase said equipment by paying therefor the sum of $————."

After the findings of fact were made, the order to cease and desist, here complained of, was entered.

The question, plainly stated, is:  Does the leasing, under the terms of the contract in evidence, at a nominal charge, of containers and pumps by petitioner to purchasers of its gasoline constitute an "unfair method of competition," as those words are used in section 5 of the Federal Trade Commission Act of September 26, 1914 (Comp. St. § 8836), or may the effect of such leasing be to substantially lessen competition and tend to create for the respondent a monopoly in the business of selling petroleum products in violation of section 3 of the Clayton Act (Comp. St. § 8835b)?

This identical matter was recently decided by the Court of Appeals in the Second Circuit in Texas Co. v. Federal Trade Commission, and Standard Oil Co. of New York v. Federal Trade Commission, 273 Fed. 478, adversely to the respondent's contention here.

1. "Unfair methods of competition" have been discussed by this court in the opinion in Kinney-Rome Co. v. Federal Trade Commission, 275 Fed. 665, just filed.

Neither section relied upon gives the Federal Trade Commission power to regulate trade generally. The jurisdiction under section 5 exists only where there are practices that amount to a fraud in regard to some public or private right; otherwise they do not, in our opinion, as we said in the Kinney-Rome Case, supra, amount to an unfair method of competition.

In addition to the reasons upon which the decision was based in the Texas Company Case, supra, we are of opinion that petitioner had the undoubted right to furnish any and every purchaser such containers and conveniences to aid him in delivering the gasoline into the possession of the consumer as it might see fit, and at such cost as it might see fit. The right to fix prices is not given to the Federal Trade Commission. The only cases where the question of price has come into consideration have been those wherein the making of a price—

in some cases high, in others low—has been used as an element in some fraudulent scheme of oppression. The price which one may put upon that which he has to sell or lease is a matter wholly his own. United States v. Freight Ass'n, 166 U. S. 290, 320, 17 Sup. Ct. 540, 41 L. Ed. 1007; Sears, Roebuck & Co. v. Federal Trade Com., 258 Fed. 307, 312, 169.C. C. A. 323, 6 A. L. R. 358.

Competition is not an unmixed good. It is a battle for something that only one can get; one competitor must necessarily lose. The weapons in competition are various. Superior energy, more extensive advertising, better articles, better terms as to time of delivery, place of delivery, time of credit, interest or no interest, freights, methods of packing, lower prices, more attractive and more convenient packages, superior service, and many others, are and always have been considered proper weapons. Expense attending the use of any weapon, the foolishness of it, the fact that a method is uneconomical, or that the competitor cannot meet any method or scheme of competition because it will be ruinous to him to do so, have not, nor has either of them, ever been held unfair. Such things are a part of the strife inherent in competition. Some merchants sell and deliver goods at the counter and you must take them away; others deliver them at your house, or in any town, state or country—that is merely a part of the bargain. Some people deliver a hat in a bag at the store; others deliver it at your house in a fancy box that is used by many purchasers as a container. Petitioner said:

"Here is a container and a pump; you may take and use them for the storage and pumping of gasoline bought from us; if you wish to use them otherwise, you may and must buy them."

In kind, that is nothing more than loaning a barrel, with a faucet in it. The fact that the tank and pump are much more expensive does not make the transaction different nor unfair. If that is not true, then the law must mean that the Trade Commission is set as a watch on competitors, with the duty and the power to judge what is too fast a pace for some and to compel others to slow up; in other words, to destroy all competition except that which is easy. We are of opinion that Congress did not intend to bestow any such power, and that it did not intend to do more than to eliminate the almost infinite variety of fraudulent practices. from business in interstate commerce.

2. We are of opinion that there was no violation of section 3 of the Clayton Act. The complaint under that section is that petitioner made leases for the container and pump and fixed the price therefor "on the condition, understanding, and agreement that the lessees thereof shall not purchase or deal in the products of a competitor or competitors, of respondent" (petitioner). There is nothing in the evidence nor in the findings of fact by the Federal Trade Commission that supports any such charge. The finding is that there was a uniform contract. There is no word there about purchasing from competitors. The only limitation is that—

"The above-described equipment shall be used by party of the second part for the sole purpose of storing and handling the gasoline supplied by party of the first part."

But there are other findings, that, taken in connection with the order to cease and desist, very clearly indicate what the Commission deemed the real trouble which it desired to reach was, viz.:

"That the monetary considerations received by respondent [petitioner] do not represent reasonable returns upon the investment in such devices and equipment, and also that such leases and loans of said devices and equipment are made for monetary considerations below the cost of purchasing and vending the same."

And again:

"That only a small proportion of such lessees as handle similar products of respondent's competitors require or use more than a single pump outfit in the conduct of their said business; that the practice of leasing such devices requires a large capital investment; that many competitors of respondent do not possess sufficient capital and are not able to purchase and lease devices as respondent does, as aforesaid, partly by reason of which such competitors have lost numerous customers to respondent; that the effect of the practice of leasing by contract such equipments, where such contracts contain the said provision restricting the use of the same to the storage and handling of respondent's products as aforesaid, may be to substantially lessen competition," etc.

There are two paragraphs of the order to cease and desist, and they are substantially as follows: The substance of the first is that petitioner shall not lease the equipment in question at a rental which will not yield to it a reasonable profit, and the substance of the second is that petitioner shall not enter into or continue to operate under contracts whereby dealers agree that, in consideration for the leasing to them of such equipment, the same shall be used only for storage or handling the product of petitioner.

The necessary conclusion from the above findings and the orders entered is: First, that the Commission deemed it lawful and proper for it to condemn certain rentals and also to fix and regulate the rentals on the equipment, because the furnishing of such equipment required a large capital investment and because many competitors of respondents were financially unable to do that same sort of thing. As we have hereinbefore said, Congress did not bestow upon respondent any power to regulate or fix prices (Sears, Roebuck & Co. v. Federal Trade Commission, 258 Fed. 312, 169 C. C. A. 323, 6 A. L. R. 358); nor do we find anything in the law which indicates that it is illegal for one competitor to do that which is beyond the financial ability of another competitor; nor do we find anything that authorizes respondent to regulate competition for that reason. Section 3 does not make it unlawful to make sales or leases, but does make it unlawful to make sales or leases on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in goods, etc., of a competitor where the effect of such lease, condition, agreement, or understanding may be to substantially lessen competition, etc. The above provisions of section 3 were the substance of the unproven charge in respondent's complaint against petitioner, referred to above. It is perfectly clear that that which the Commission found was "the uniform contract used by respondent for leasing such devices" contained no provision comparable with or equivalent to the thing pro-

276 F.—44

hibited in section 3. We are of opinion that there is nothing in the section that could be construed as preventing petitioner, under the circumstances shown in this case, from putting a limitation upon the use of the thing leased. It has long been a practice in real estate leases to include limitations upon the use of the property, and the reasons for doing so are obvious. Such has likewise been the practice in the leasing or hiring of personal property. The reasons for such limitations are even more obvious than those for the placing of them in real estate leases. Some of the reasons are pointed out in the opinion in the Texas Company Case, supra.

3. In this case, as in the Fruit Growers' Express Case, 274 Fed. 205, decided by this court, opinion filed June 16, 1921, if an order to cease and desist is to stand, the effect of the action of the Federal Trade Commission seems to have been to terminate and destroy the contractual rights of persons not parties to the proceeding.

The order to cease and desist is annulled and set aside.