## AUTOMATIC CANTEEN CO. OF AMERICA v. FEDERAL TRADE COMMISSION.

### No. 10239.

United States Court of Appeals
Seventh Circuit.

Jan. 18, 1952.

Petition for Rehearing and Motion to
Adduce Additional Evidence

Denied March 3, 1952.

Harold F. Baker, L. A. Gravelle, Edward F. Howrey, Washington, D. C., J. Arthur Friedlund, Emil N. Levin, Elmer M. Leesman, Chicago, Ill., for petitioner.

William T. Kelley, Chief Counsel, James W. Cassedy, Asst. Gen. Counsel, James E. Corkey, Sp. Atty., Federal Trade Commission, Washington, D. C., for respondent.

John C. Butler, Chicago, Ill., H. Thomas Austern, Stanley L. Temko, William A. Quinlan, Washington, D. C., Thomas R. Mulroy, Chicago, Ill. (Richard F. Wilkins, Washington, D. C., Hopkins, Sutter, Halls, DeWolfe & Owen, Chicago, Ill., of counsel), for amici curiae.

Before KERNER, DUFFY, and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

Petitioner is engaged in the two-fold business of developing and leasing automatic vending machines and in the purchase of candy, gum, nuts and other confectionery products for resale to its distributors who in turn distribute them to the public by means of the vending machines. It seeks review of an order of the Federal Trade Commission directing it to cease and desist from certain discriminatory practices related to both aspects of its business. The Federal Trade Commission, by cross petition, seeks affirmance and enforcement of the order.

The complaint was in two counts. Count I charged violation of § 3 of the Clayton Act, 15 U.S.C.A. § 14, by the use of exclusive-dealing contracts in the leasing of the vending machines. Count II charged violation of § 2(f) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(f), by knowingly inducing and knowingly receiving price discriminations in connection with its purchases of gum, nuts and confectionery products in the course of commerce. Petitioner's only answer was a general denial of any violation of the Act as charged in either count. At the close of the Commission's case it moved to dismiss the complaint and, upon denial of its motion, it offered no evidence in response.

The Commission found that petitioner had been for nearly twenty years engaged in purchasing nationally known candy and other products of standard weight and quality from many manufacturers and producers throughout the country and in reselling them, principally as a wholesaler, to lessees of its automatic, coin-operated vending machines. It had also been engaged in the development of such machines, called canteens, although it did not manufacture them. Its system was to lease the machines to "distributors" who became its sole customers for the confectionery products in which it dealt. The machines were generally located in offices, factories, and other commercial establishments. As of January 1946, it owned 230,150 machines which were leased to 83 distributors located in 112 separate territories in 33 states and the District of Columbia. Under the terms of the lease contracts the distributors bound themselves not to use any vending machines other than those of petitioner during the term of the contract and for five years after termination, not to sell in the machines any products other than those purchased from petitioner, and not to sell any such products except in the machines.

The Commission found that the effect of petitioner's exclusive-dealing contracts had been to substantially lessen competition or tend to create a monopoly in both lines of commerce in which it was engaged, namely, the sale and purchase of packaged merchandise suitable for distribution in automatic vending machines, and the dealing in the machines. Thus competition was substantially lessened between petitioner's suppliers and their competitors who were unable to sell to petitioner, between petitioner and its competitors, and between its distributors and their competitors, and this, in turn, tended to create a monopoly in petitioner, its distributors, and certain manufacturers and processors. The contracts had a similar effect as between petitioner and vending machine manufacturers.

The Commission found that petitioner had knowingly induced and knowingly received lower prices from its suppliers than the prices paid by its competitors for

similar products; that the prices paid by petitioner were from 1.2% to 33% lower than those paid by its competitors; and that it received such differentials from about 80 of its 115 suppliers. Petitioner made no attempt to show cost justification as to any of these differentials. The Commission further found that petitioner had attained a dominant position in the sale and distribution of the products it dealt in through and by means of the vending machines, with sales through the machines expanding from $1,937,117 in 1936 to $14,253,547 in 1944, which expansion the Commission attributed largely to its exclusive-dealing contracts and its enjoyment of lower prices in the purchase of its goods.

The Commission concluded that petitioner was guilty of the violation charged and accordingly entered its order that petitioner cease and desist:

1. ·From entering into, enforcing or continuing in operation the exclusive-dealing contracts described, "Provided, however, that nothing contained in the preceding paragraphs * * * shall be construed as prohibiting respondent from entering into any contract * * * with any lessee * * * which provides for payment to the respondent of such compensation as it may desire for the use of its automatic vending machines, * * * 'for protection of quality and salability of products sold through its said vending machines, or provides for protection of respondent's franchise territories and distribution, of its good will and trade name, of its rental and additional income, of the development and retention of its business in its distributors' territory, and of the public, when none of such provisions are in conflict with the prohibitions set forth herein."

2. In connection with the purchase of confectionery products, gum and nuts, "From Knowingly inducing or knowingly receiving * * * any discrimination in the price of such products, by directly or indirectly inducing [or] receiving * * * a net price from any seller known by respondent or its representatives to be below the net price at which said products of like grade and quality are being sold by such seller to other customers, where the seller is competing with any other seller for respondent's business, or where respondent is competing with other customers of the seller; provided, however, that the foregoing shall not be construed to preclude the respondent from defending any alleged violation of this order by showing that a lower net price received or accepted from any seller makes only due allowance for differences in the cost of manufacture, sale or delivery resulting from the differing methods or quantities in which such commodities are by such seller sold or delivered to respondent."

Petitioner challenges the order as to Count I on the grounds: That it is defective for failure to join petitioner's lessees as parties, thus destroying valuable contractual rights in their absence; and that the condition that the lessees use only petitioner's merchandise in the canteens is a lawful one.

Petitioner analyzes the offending contracts as providing for (1) nominal rental, (2) exclusive territory for distributors, (3) exclusive use of petitioner's canteens, and (4) exclusive purchases of merchandise from petitioner for use in the canteens, and it contends that destruction of (3) and (4) destroys the mutuality of the contracts, thereby destroying the contracts and thus stripping the lessees of valuable contract rights and injuriously affecting them in their absence. On this point petitioner relies on two decisions of this court, Fruit Growers' Express, Inc., v. Federal Trade Commission, 7 Cir., 274 F. 205 (certiorari granted, 257 U.S. 627, 42 S.Ct. 56, 66 L.Ed. 405, and dismissed by stipulation on motion of the Solicitor General, 261 U.S. 629, 43 S.Ct. 518, 67 L.Ed. 835) and Sinclair Refining Co. v. Federal Trade Commission, 7 Cir., 276 F. 686, affirmed, 261 U.S. 463, 43 S.Ct. 450, 67 L.Ed. 746. While the cases do appear to furnish authority for petitioner's contention on this point, we do not feel impelled to follow them in view of the difference in the factors which appear to have impressed this court in annulling the orders there involved. Moreover, we note that petitioner's analysis omits reference to other important provisions of the contract which favor the

lessor, namely, the guarantee by the lessee of an average monthly sales volume comparable to the national average sales volume for the same month, and the right of the lessor to terminate the contract upon default by the lessee in any condition therein, and a covenant that, upon termination of the lease, the lessee shall not engage in the distribution of any merchandise in the territory by means of vending machines for a period of five years. Under the rule in United Shoe Machinery Corp. v. United States, 258 U.S. 451, 456, 42 S.Ct. 363, 365, 66 L.Ed. 708, the lessees were not indispensable or even necessary parties to the proceedings. "The covenants enjoined were inserted for the benefit of the lessor, and were of such restrictive character that no right of the lessee could be injuriously affected by the injunction." Petitioner seeks to distinguish this case on the basis of the total absence of any mutuality of consideration. We find no merit in this attempted distinction. And we note that this case was decided after the two decisions of this court, hence not available to it on the question of parties.

■ With respect to the asserted legality of the condition, petitioner again refers to the Sinclair case as affirmed, 261 U.S. 463, 43 S.Ct. 450, 67 L.Ed. 746. However, we think the distinction between the elements of the contract considered controlling by the Supreme Court there, see 261 U.S. 463, at page 474, 43 S.Ct. 450, at page 453, and those of the contract here involved (including those omitted by petitioner) make it better authority for upholding the order than for setting it aside. See also Standard Oil Co. of California v. United States, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371; International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20. And there certainly can be no question on this record but that the actual effect of the conditions was to foreclose competitors from a substantial share of the market as to both lines of petitioner's business. As the Commission pointed out, with respect to the products distributed, competitive jobbers and wholesalers cannot sell to these lessees who operate over 200,000 of petitioner's vending machines, and manufacturers who do not sell to petitioner but might sell to its lessees are also shut out of the competition with petitioner. This constitutes a very substantial interference with competition. Moreover, we are convinced that this portion of the order does not constitute an interference with petitioner's rights in view of the fact that its provisos furnish ample safeguard for the protection of petitioner's goodwill and right to compensation.

We are informed by counsel that the petition to review the Count II portion of the order presents the first court test of a buyer's liability under § 2(f) of the Act although there have been numerous proceedings thereunder before the Commission. The principal question raised relates to the burden of proof. Petitioner contends that the Robinson-Patman Act which permits price differentials based on cost differences does not require a buyer to prove his seller's cost justification, and if it be construed to do so, such construction imposes so heavy a burden on the buyer as to amount to a deprivation of due process as well as eliminating cost justification from the Act.

For a proper understanding of the issues it is necessary to read subsections (a), (b), and (f) of § 2 together.

Section 2(a) makes it unlawful for any person engaged in commerce, in the course of such commerce, to discriminate in price between different purchasers of commodities of like grade and quality where the effect of such discrimination may be substantially to lessen competition, provided that nothing contained therein shall prevent differentials which make only due allowance for differences in cost of manufacture, sale or delivery resulting from differing methods or quantities in sale or delivery.

Section 2(b) provides that upon proof of a discrimination the burden of rebutting the prima facie case thus made by showing justification "shall be upon the person charged with a violation of this section, and unless justification shall be affirmatively shown, the Commission is authorized to issue an order terminating the discrimination: Provided, however, That nothing contained in sections 12, 13 * * * of this title shall prevent a seller rebutting the

prima facie case thus made by showing that his lower price * * * to any purchaser * * * was made in good faith to meet an equally low price of a competitor * * *."

Section 2(f) provides that it shall be unlawful for any person "engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section."

We find no basis in the language of the three subsections for a distinction in their scope as between buyers and sellers. It has now been established that in a proceeding under the Act, once the Commission has established the fact of a price differential in the sale of like products in commerce tending to lessen competition or create a monopoly, the burden rests upon the seller of such products to justify the discrimination by the means provided in subsection (a) or (b). In other words, § 2(a) prohibits the discriminations unless they can be justified, and, as the Court pointed out in Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 44, 68 S.Ct. 822, 827, 92 L.Ed. 1196, "the general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits, requires that respondent undertake this proof under the proviso of § 2(a)." Petitioner concedes, as it must, that "in a proceeding against a seller under § 2(a), the seller has the burden of proof to show that he comes within the proviso." But § 2(f) makes it equally unlawful for a buyer to knowingly induce or receive any discrimination prohibited by the section, and we see no escape from the conclusion that this places precisely the same burden of proving cost justification upon the buyer, once the Commission establishes *knowing* inducement or receipt of a price discrimination otherwise illegal. "The two sections are in all respects parallel. * * * The discrimination in price which it is unlawful for a seller to grant under Section 2(a) is the same discrimination in price which it is unlawful for

a buyer knowingly to receive under Section 2(f) * * *." Austin, Price Discrimination and Related Problems Under the Robinson-Patman Act, American Law Institute (1950) pp. 150, 151.

This construction of the section is further borne out by the language of subsection (b) imposing the burden of rebutting the prima facie case by showing justification, not upon the *seller,* but upon the *person charged with violation of the section,* although it further provides that the *seller* may rebut by showing that the lower price was made in good faith to meet a competitive low price. Petitioner cannot say that this apparently careful choice of language was meaningless, as it would be under its theory. Hence we cannot agree that in order to sustain its charges under § 2(f) the Commission was required to prove the absence of cost justification.

Petitioner further contends that such a construction of the section constitutes a denial of due process by imposing an impossible burden of proof upon it. However, we think that defense is not available to petitioner on the record in this case. Its only answer to the charge was a general denial and, at the close of the Commission's case, a motion to dismiss. It thus laid no foundation for its assertion before this court that cost justification was impossible of proof by a buyer and that a construction of § 2(f) requiring a buyer to sustain the burden of such proof would be a violation of due process. It is not enough just to assert that proof is not available, or is impossible. Tennessee Consolidated Coal Co. v. Commissioner of Internal Revenue, 6 Cir., 117 F.2d 452. As the Court said in Anniston Mfg. Co. v. Davis, 301 U.S. 337, 352, 353, 57 S.Ct. 816, 823, 81 L.Ed. 1143, "Impossibility of proof may not be assumed. * * * Whether or not any such impossibility of determination will exist is a question which properly should await the ascertainment of the facts." And when petitioner chose not to introduce any evidence as to the facts it may not now say that the defense allowed by the Act is useless or impossible of proof.

It is no doubt true that it is more difficult for a buyer to establish his seller's cost justification than it is for the seller from whom he bought. But we cannot say that it is unreasonable or arbitrary to expect a buyer who induces or knows that he is receiving prices substantially lower than his competitors to make some good faith effort to ascertain that such lower prices are justified by lower costs in the sales to him. Nor can we assume that the Commission will be so arbitrary or unreasonable as to the quantum of proof required of the buyer in a proceeding under § 2(f) as to deprive him of due process.

■ Petitioner also contends that two findings of the Commission are not supported by substantial evidence: (1) That it informed prospective suppliers of the prices and terms which would be acceptable to it without consideration of costs; and (2) that it knew that many of the prices paid by competitors were higher than those it sought to induce and did receive in so far as that meant knowledge of *net* prices actually paid by competitors. We have examined the record and find that it supports both findings.

■ One further question remains, raised by petitioner for the first time in its reply brief, whether the Commission is entitled to an enforcement order on cross petition to petitioner's petition to review, in the absence of a showing that violation of the order has occurred or is imminent. The Court of Appeals for the Second Circuit recently decided this question adversely to the Commission. Ruberoid Co. v. Federal Trade Commission, 2 Cir., 191 F.2d 294. We regret that we cannot agree with the reasoning and conclusion of that eminent court in denying enforcement. We are in accord with the conclusion of Judge Clark, dissenting, and the reasons stated by him, that the court of appeals does have the jurisdiction and the duty to order enforcement on the cross petition of the Commission. We deem it unnecessary to restate or amplify those reasons.

Order affirmed; enforcement granted.

## On Petition for Rehearing and Motion for Leave to Adduce Additional Evidence.

After the entry of our decision affirming the order of the Federal Trade Commission and granting its cross petition to enforce, petitioner filed petition for rehearing and a motion for leave to adduce additional evidence under § 11 of the Clayton Act, 15 U.S.C.A. § 21.

Section 11 authorizes the court to order such additional evidence to be taken before the Commission if the movant "shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Commission".

The evidence petitioner now seeks to add to the record is intended to show that if the Robinson-Patman Act requires a buyer to prove its seller's cost justification, the statute imposes so heavy a burden on it as to amount to a deprivation of due process because such proof is not available or is impossible.

As grounds for its motion petitioner asserts that (1) the evidence is material in that this court held that the defense of lack of due process was not available to petitioner because it failed to come forward with evidence pertaining thereto; and (2) that there were reasonable grounds for failure to adduce it because it proceeded on the theory that there was no rational connection between the proven fact of receipt of price differentials and the presumption that (a) such differentials were unlawful and (b) petitioner knew this fact.

■ We find no merit in petitioner's motion. It tried its case before the Commission on the theory that the Commission had the burden of proving absence of cost justification, and it contended that the Commission failed to sustain that burden, hence that it failed to prove its case, and for that reason petitioner simply refrained from introducing any evidence in defense. What it is now asking for is, in effect, to have the entire proceeding reopened in order to enable it to have a new hearing on a new theory of defense after it has had an adverse

decision as to the theory originally relied upon in full and fair hearing before the Commission, and review of all issues raised on the record as made in that hearing. We think § 11 was not intended for any such purpose. This was not the "mere omission of some step which has escaped the attention of both parties" referred to in Kelly v. United States, 300 U.S. 50, 54, 57 S.Ct. 335, 338, 81 L.Ed. 507, cited by petitioner. There is considerable difference between the failure to authenticate a record, the situation in that case, and the failure to offer any evidence, relying upon a theory of defense subsequently held to be without merit. We find no such "reasonable grounds for the failure to adduce such evidence in the proceeding before the Commission" as would justify the granting of the motion.

With respect to the petition for rehearing, we find that it presents no questions which were not fully considered by us in our original review of the petition and cross petition.

Petition for rehearing and motion to adduce additional evidence denied.